Points Decided.

(May 28, 1923.)

ISABELLA McDOUGALL and NINA HURST, Guardian of the Person and Property of ISABELLA Mc-DOUGALL, Appellants, v. MATHEW McFALL, Respondent.

[215 Pac. 847.]

FIDUCIARY RELATION—ACTION TO SET ASIDE CONVEYANCE—BURDEN OF PROOF—WHEN PRESUMPTIVELY VOID

1. When a fiduciary relation is established between the parties, by which the dominant party secures any profit or advantage at the expense of the person under his influence, transactions between the parties in this relation are presumptively fraudulent.

2. Transactions between a party and one bearing a fiduciary relation to him are upon his motion *prima facie* voidable upon grounds of public policy, and the fiduciary relation being established, the burden is upon the one receiving the benefit to show the absence of undue influence, or that the grantor acted upon independent advice, or that the dealing was at arm's-length, and in the utmost good faith on his part, and was just and equitable between the parties.

3. Transactions between near relatives, such as parent and child or husband and wife, do not create a presumption of invalidity or shift the burden of proof to the grantee or person receiving the benefit, in the absence of a showing of fraud or undue influence, the consideration of love and affection in such cases being sufficient to support a conveyance of this character as against persons not having superior rights, or who have not suffered any pecuniary loss by such transaction.

, APPEAL from the District Court of the Fourth Judicial District, for Blaine County. Hon. F. J. Cowen, Judge.

Action to set aside conveyance and recover rent. From judgment for defendant, plaintiffs appeal. *Reversed* and *remanded,* with instructions.

Publisher's Note.

3. Presumption and burden of proof of undue influence in case of conveyances between parent and child, see notes in 17 Ann. Cas. 989; 18 Ann. Cas. 539; Ann. Cas. 1915D, 711; Ann. Cas. 1918B, 457; 11 A. L. R. 737.

W. W. Adamson and McFadden & Perkins, for Appellants.

Inadequacy of consideration of itself alone is no ground for setting aside a deed of conveyance—there must be actual fraud, or fiduciary relation must exist to render inadequacy of consideration a ground for setting aside a deed. (Devlin on Real Estate, sec. 814, p. 1468; Black on Res. & Can., sec. 247, pp. 652, 653.)

Where a deed which purports to be founded on a valuable consideration is impeached by showing that no such consideration was paid, such deed cannot be sustained by showing that the consideration was natural love and affection. (18 C. J. 421; 47 Am. Dec. 382.)

When a confidential relation exists between two persons resulting in one having an influence over the other and a business transaction takes place between them resulting in a benefit to the person holding the influential position, the law presumes everything against the transaction and casts the burden of proof upon the person benefited to show that the confidential relation has been as to that transaction at least suspended and that it was as fairly conducted as between strangers. (Jones on Evidence, sec. 186; 13 Cyc. 737; *Soper v. Cisco*, 85 N. J. Eq. 165, Ann. Cas. 1918B, p. 454, 95 Atl. 1016; Black on Res. & Can., secs. 249, 253; 18 C. J. 423, note 95.)

C. O. Stockslager and Bothwell & Chapman, for Respondent.

"Want of capacity to execute a conveyance cannot be presumed from the grantor's extreme age." (*Carnegie v. Diven*, 31 Or. 366, 49 Pac. 891; *Christman v. Christman*, 16 Or. 127, 18 Pac. 6.)

"The rule of presumption of undue influence in gaining substantial advantage in confidential relations is applied only against one who is assumed to be dominant in relationship." (*Westphal v. Heckman*, 185 Ind. App. 88, 113 N. E. 299; *Walker v. Wallace* (Mo.), 186 S. W. 1041; *Noble v. Hunter*, 195 Mich. 713, 162 N. W. 294; *McFarland v. Brown* (Mo.),

193 S. W. 800; *Furlong v. Tilley,* 51 Utah, 617, 172 Pac.
676; *Dill v. Karcher* (Del.), 102 Atl. 781; *Bennett v. Ward,*
272 Mo. 671, 199 S. W. 945; *Rowe v. Freeman,* 89 Or. 428,
172 Pac. 508, 174 Pac. 727.)

"Mere presumption of undue influence exerted by a gran-
tee over the grantor, arising from confidential relations be-
tween the parties, may be overcome by proof of competent,
independent advice and counsel, or by any other evidence
which shows that the transaction was not affected by any
abuse of confidence." (*Manfredo v. Manfredo,* 191 Ala.
322, 68 So. 157; *Post v. Hagan,* 71 N. J. Eq. 234, 124 Am.
St. 997, 65 Atl. 1026; *Walsh v. Harkey* (N. J.), 69 Atl. 726;
18 C. J. 427.)

"Inadequacy of consideration alone is not sufficient to
justify a court of equity in setting aside a deed regularly
executed.". (*McKeever v. Carter,* 53 Okl. 360, 157 Pac. 56;
*Kline v. Kline,* 14 Ariz. 369, 128 Pac. 805; *Wigginton v.
Burns* (Mo.), 216 S. W. 756; *Bell v. Mills,* 60 Okl. 72, 158
Pac. 773; *Henley v. Daveis,* 57 Okl. 45, 156 Pac. 337; *Berry
v. Hall,* 105 N. C. 154, 10 S. E. 903; Bigelow, Frauds,
p. 136, sec. 9; *Johnson v. Tyler,* 175 Iowa, 723, 157 N. W.
184.)

"A contract to support, made in consideration of a deed
conveying property to the promisor, will be rescinded, and
the deed set aside, only when such facts are shown as will
warrant inference that the contract was entered into and
the deed secured with fraudulent intent on the part of
the grantee to repudiate his promise." (*Chamberlain v.
Sanders,* 268 Ill. 41, 108 N. E. 666; *Ames v. Moore,* 54 Or.
274, 101 Pac. 769; *Rogers v. Scott,* 28 Cal. App. 93, 151 Pac.
379; *Fine v. Lasatter,* 110 Ark. 425, Ann. Cas. 1915C, 385,
161 S. W. 1147; *Looby v. Redmond,* 66 Conn. 444, 34 Atl.
102; *Finch v. Green,* 225 Ill. 304, 80 N. E. 318; *Flynn v.
Moore,* 181 Iowa, 1163, 165 N. W. 351; *Hopkins v. Black-
burn,* 144 Ky. 839, 139 S. W. 1065; *Root v. Snyder,* 161 Mich.
200, 126 N. W. 206; *Wing v. Havelick,* 253 Mo. 502, 161
S. W. 732; *Northrup v. Hall,* 228 Pa. St. 20, 76 Atl. 429;

*Son v. Shealy,* 112 S. C. 312, 99 S. E. 825; *Houston v. Ritchie* (Tex. Civ.), 191 S. W. 362.)

In an action to set aside deed of deceased, the fact that defendant expended substantial sums of money in caring for the deceased and paying off indebtedness was a circumstance proper to be considered on the question of undue influence. (*Ross v. Lawrence,* 193 Iowa, 47, 186 N. W. 455; *Nobles v. Hutton,* 7 Cal. App. 14, 93 Pac. 289; *McDonell v. Mc-Donell,* 10 Cal. App. 63, 101 Pac. 40; *Watkins v. Watkins,* 39 Mont. 367, 102 Pac. 860; *Armstrong v. Burt* (Tex. Civ.), 138 S. W. 172; *Pusic v. Salak,* 261 Pa. St. 512, 104 Atl. 751; *Grieve v. Howard,* 54 Utah, 225, 180 Pac. 423; *Grace v. Callahan,* 189 Iowa, 213, 178 N. W. 520; *Baugh v. Baugh* (Tex. Civ.), 224 S. W. 796.)

WILLIAM A. LEE, J.—This action was commenced in August, 1918, on behalf of Isabella McDougall by her daughter, Nina Hurst, guardian of her person and estate, upon two causes of action, the first being to set aside an alleged fraudulent conveyance of real property executed by appellant McDougall to respondent McFall, and the second count as amended being to recover the value of the use and occupation of said premises for the year 1913 and for the years 1915 to 1918, inclusive, alleged to be $12,000. Since the taking of this appeal Isabella McDougall has died, and by stipulation the action is continued by the guardian.

The property in question came to the deceased by distribution from a deceased daughter's estate. It is commonly known as the Crooks Stock Ranch, on Fish Creek, in Blaine county, Idaho, and consists of about 760 acres, of which 360 acres are meadow-land and the remainder pasture, with the water rights appurtenant to such lands. The prayer is to set aside the deed and to recover a money judgment for the value of the use and occupation.

The first cause of action alleges the value of the premises at the time of the conveyance in December, 1917, to have been $50,000; that the consideration which respondent McFall agreed to pay appellant for the same was his note for

$10,000 at six per cent interest, secured by a mortgage upon the premises; that the appellant was above ninety years of age, infirm of body and mind, and incapable of understanding the nature of the transaction; that she was making her home with respondent and his family; that the conveyance was obtained by undue influence and for an inadequate consideration, while respondent occupied a fiduciary relation toward her; and that the same was fraudulent and void.

The answer specifically denies fraud and undue influence, and contends that the transaction was fair and that a reasonable consideration had been paid, and prays that the title be confirmed in respondent. The answer as amended at the beginning of the trial pleads a total consideration of $21,000, consisting of the $10,000 note, the assumption of a $5,000 mortgage upon the premises, and a balance claimed by respondent against appellant of $6,086.80 for expenditures made on her behalf in operating the farm during the years mentioned. The denials in the answer as to the value of the premises, and also of the use and occupation, are in form negatives pregnant, and according to settled rules of pleading admit the value of the farm to have been anything less than $50,000 and the value of the use and occupation thereof to have been anything less than $12,000. However, the cause was tried upon the theory that these denials placed in issue both the value of the land and respondent's occupation of the same, much of the testimony being directed to the question of values.

The first cause of action, to set aside the fraudulent conveyance, is clearly in equity, and the second cause of action, to recover a money judgment for the value of the occupation of the premises, is at law. The case was tried in January, 1920, to a jury, in the usual manner of the trial of an action at law. However, the issues tendered by the pleadings were submitted to the jury in the form of special interrogatories, and no general verdict was rendered.

The jury found that the plaintiff Isabella McDougall, at the time of making the conveyance to respondent, was not men-

tally capable of understanding the nature and effect of the same. It failed to find that there was any improper or undue influence used to induce the conveyance, and found that the value of the premises was $30,400 and the value of its use and occupation for the years of 1915 to 1919, inclusive, was $7,500, fixing the amounts according to years. This verdict was filed in January, 1920, and the court, apparently with the consent of counsel on both sides, treated the same as advisory and took the cause under advisement. In November following, counsel appeared before the court at chambers at. Blackfoot and orally argued the same, after which findings of fact and conclusions of law were made and entered by the court and judgment thereon rendered, whereby the court found and concluded that the conveyance was not fraudulent, that the title should be confirmed in respondent, subject to his paying the $10,000 note executed contemporaneously with the conveyance and the payment of the $5,000 mortgage against the premises at the time of the conveyance, and further that appellant McDougall was entitled to a good and sufficient home with respondent McFall and his family for the remainder of her natural life, provided she wished to accept the same and reside with respondent, which was not an issue in the case, and awarded respondent costs.

No specific reference is made, either in the conclusions of law or the judgment, as to the second cause of action, to recover for the use and occupancy of the premises in question. The findings, however, are to the effect that about 1911 or 1912 appellant McDougall executed to respondent McFall a general power of attorney for the purpose of closing up the estate of Mrs. Crooks, her daughter, from whose estate Isabella McDougall obtained the premises in question; that such power of attorney had never been revoked; that respondent had closed up this estate and obtained this loan upon these premises with which to pay off the debts against said estate and obtain possession; that respondent had leased the premises from Mrs. McDougall during the years mentioned in the complaint and prior to the conveyance, and

had expended on that account $16,269.30 and had received a net return of $9,462.50; that appellant was indebted to respondent for the balance of $6,086.80 as claimed in said answer. The court also finds that no improper or undue influence was used by respondent to induce the execution of the deed; that about the time of the conveyance of the premises to respondent the same were of the value of $30,400; that while the consideration paid by the respondent to Mrs. McDougall was not the full market value of the lands conveyed, considering the circumstances and the relation of the parties, and the treatment accorded to Mrs. McDougall by the respondent McFall while she was a member of his family, such consideration was not inadequate, nor was the transaction improvident on the part of appellant.

From the judgment thus entered this appeal is taken upon ten assignments of error, which it will not be necessary to consider severally, further than to say that while they do not specifically refer to a number of errors which appear in the record, they are sufficient to raise the principal questions relied upon for a reversal.

The record discloses such an intermingling of procedure at law and in equity that it is difficult to determine the exact character of this action. Clearly, the second cause of action is at law, and if the question was seasonably raised, appellant would have been entitled to a verdict of a jury as to the reasonable value of the use and occupation of these premises. The jury appears to have been impaneled and instructed upon the theory that its verdict was to be mandatory, not directory. It is well settled, of course, that where a jury is called to advise the conscience of the chancellor, the court may disregard such advice, but the practice of calling juries to sit in protracted trials wherein issues both of law and equity are submitted, with disregard of the jury's action thereafter, is not to be commended. No objection, however, appears to have been made by either party to this action as to the form of procedure, and its consideration can only arise in case this court is confronted with the alternative of

accepting the verdict of the jury on the questions of fact or the findings of the court.

As we view the law applicable to the facts, either as found by the jury or the court, and as established by the undisputed testimony, the cause must be reversed. While the testimony shows that respondent and his family were kind and considerate to Mrs. McDougall during the five years that she was a member of the family, that she was furnished with a good home and supplied by them with all of her material needs, apparently to her entire satisfaction, that she was a woman of better than average mentality with regard to certain feats of memory, being of a religious temperament and being exceptionally conversant with the Scriptures in the Gaelic tongue, and taking great delight in quoting therefrom, and the witnesses who frequently met her describing her as usually cheerful and interesting, as well as being comfortable and well cared for in respondent's family, the fact remains that at the time of this conveyance she was past ninety years of age, was suffering from an injury received in an accident shortly before she came to live with the McFalls, to such an extent that she walked with difficulty, and was frequently confined to her bed. She was wholly inexperienced in business matters, and was subject to periods of great mental depression by reason of her worries incident to the ownership of this farm, a state of mind frequently exhibited by aged people who have previously lived a frugal life. While as observed, the answer in effect admits the value of this land to have been a little less than $50,000 and its occupancy during the period in controversy a little less than $12,000, appellant not having relied upon this admission, perhaps respondent should not be bound thereby, but there is abundant evidence in the record to support the findings of both the court and the jury that at the time of the transfer of this land it was worth $30,400. Mrs. McDougall appears to have placed great confidence in respondent, having given him a general power of attorney to transact all of her business with regard to the closing up of her daughter's estate from which she

inherited this property, and to have taken up her home with him and his family, who treated her kindly, and to whom she appears to have been much attached. This state of facts establishes a fiduciary relation between the parties, and the authorities are practically a unit in holding that:

"In general, a relation of trust and confidence, existing between the grantor and grantee, raises a presumption against the validity of the conveyance, which the grantee has the burden of rebutting by showing the absence of fraud and undue influence." (18 C. J. 422, and authorities cited under note 95.)

"When a fiduciary relation is established between parties, courts of equity scrutinize very closely any transaction between the parties by which the dominant party secures any profit or advantage at the expense of the person under his influence. All transactions between parties in this relation are presumptively fraudulent and void." (25 C. J. 1120, sec. 10, and authorities cited under note 77.)

"Transactions between a party and one bearing a fiduciary relation to him are upon his motion *prima facie* voidable upon grounds of public policy, and the burden of proof, the fiduciary relation being established, is upon the one receiving the benefit to show an absence of undue influence by establishing the fact that the party acted upon competent and independent advice of another, or such other facts as will satisfy the court that the dealing was at arm's length, or he must show that the transaction was had in the most perfect good faith between the parties, and was equitable and just between the parties, or, as some of the authorities say, that it was beneficial to the other party." (*Thomas v. Whitney*, 186 Ill. 225, 57 N. E. 808; 1 Beach on Contracts, sec. 825.)

"Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a fiduciary relation or from overmastering influence, or on the other, from dependence, or trust

justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled.'' (*Cowee v. Cornell*, 75 N. Y. 91, 31 Am. Rep. 428; *Dawson v. National Life Ins. Co.*, 176 Iowa, 362, Ann. Cas. 1918B, 230, 157 N. W. 929, L. R. A. 1916E, 878.)

The conceded facts, as well as the verdict of the jury and the findings of the court, bring the instant case within the doctrine announced by the foregoing authorities and many others that might be referred to. Admitting that the value of the property transferred does not exceed that found by the court, and that the consideration which respondent intended to pay was in fact $21,000, and taking into account Mrs. McDougall's age, her physical and mental condition, the fact that she had been a member of respondent's family for five years and had been treated kindly and shown such consideration as would ordinarily be shown to a near relative, with the further fact that under a general power of attorney respondent had managed this property for several years, the situation is such that a transfer under these circumstances cannot be upheld, even though no actual fraud was intended.

An exception to this rule is recognized with regard to transactions between near relatives, and accordingly it has been frequently held that a conveyance or gift from a parent to a child or a husband to a wife does not create a presumption of invalidity, but that the party attacking the same must show fraud or undue influence. The authorities are not in entire harmony as to the reasons for this exception. (18 C. J. 424, 425, secs. 503–505.) Kinship alone is generally held not to establish a fiduciary relation, but perhaps the better reason for this exception is that a consideration of love and affection is sufficient to support a conveyance or gift between near relatives, as against all persons not claiming against the donor for a valuable consideration,

such transactions being in principle not different from a bequest or devise.

In *Hiddleson v. Cahoon, ante,* p. 142, 214 Pac. 1042, the deed of a wife to her husband is upheld against the later deed of the grantor to her daughter, which was admittedly a gift, the first conveyance in favor of the husband being upheld as against the subsequent attempted gift to the daughter in the absence of the daughter attempting to show any superior equities that would render the first conveyance inequitable and unjust.

It should be observed, however, that until the trial of this cause was commenced it does not appear from the pleadings that respondent intended to pay more than the consideration recited in the deed. He appears to be a capable business man, of large affairs, and of course knew that Mrs. McDougall was possessed of no other property; that the $5,000 mortgage was a valid lien against the land, which he would have to discharge; and further, that his claim for expenditures made on behalf of Mrs. McDougall, amounting to something in excess of $6,000 as stated, could only come out of this property or the proceeds received from its sale. If the validity of this conveyance by Mrs. McDougall to respondent had not been challenged by an action to set it aside, under the terms of the deed itself respondent could have claimed that the entire consideration which he was to pay, as expressed by the instrument, was only the $10,000 note which he had executed to the grantor and the assumption of the mortgage, or $15,000 in all. While at the time of this transaction respondent may have thought that the trouble and expense of caring for Mrs. McDougall during the remainder of her life would reasonably be worth any residue of her estate remaining after her death, a court can only take into account the situation as it existed at the time of the conveyance, and when so considered, it is clear that the consideration agreed upon was greatly below the value of the property attempted to be conveyed, and under the very great weight of authority cannot be upheld, the fiduciary relation being conceded.

The cause is reversed, with instructions that the trial court set aside the deed of conveyance without prejudice to the respective claims either party may have against the other, to the same extent as if the conveyance had not been made. Costs awarded to appellant.

McCarthy, J., concurs.

Budge, C. J., concurs in conclusion reached.