150 P.3d 288

COUNTRY COVE DEVELOPMENT,
INC., Plaintiff–Appellant,

v.

Myron J. and Treva V. MAY, Defendants–
Respondents.

No. 31536.

Supreme Court of Idaho,
September 2006 Term.

Dec. 21, 2006.

Janet E. Jenkins, Sandpoint, for appellant.

James T. Diehl, Sandpoint, for respondent.

SCHROEDER, Chief Justice.

Irwin and Rita Abell (collectively "the Abells," individually "Irwin" and "Rita"), as owners of Country Cove Development, Inc. ("Country Cove"), brought this suit against Myron J. and Treva V. May (collectively "the Mays," individually "Myron" and "Treva"), seeking rescission of a 1993 contract under which the Abells agreed to buy out the Mays' interest in a motel held by the parties as partners. Irwin Abell and Treva May are brother and sister.

## I.

### STATEMENT OF FACTS

In 1984 the Abells purchased an interest in what is now the Country Inn, a motel located in Bonner County. They formed a limited partnership with the Mays to operate the motel. The Abells operated the motel while the Mays, residents of Indiana, provided capital as limited partners. In 1989 the partnership defaulted on the acquisition debt. The parties made an agreement with the bank for the Mays to purchase the motel in foreclosure and take title in their name. The Abells and Mays agreed that the Abells would manage and operate the motel and acquire a ten percent equity interest in the motel for each year of service rendered.

In 1991 or 1992 the Mays notified the Abells that they wished to withdraw from the partnership, and the parties began negotiations for the Abells to purchase the Mays' interest in the motel. The parties agreed on a price but not on an interest rate. Negotiations broke down to the point that Myron May threatened to evict the Abells. In response Irwin Abell sent a letter threatening to sue for dissolution of the partnership. Treva destroyed the letter so that Myron never knew of it. Treva then called her brother Irwin and begged him to accede to Myron's terms, stating that Myron was suicidal over the dispute and would kill himself if Irwin sued. Apparently Myron had attempted suicide on a previous occasion over an unrelated matter. Irwin agreed not to sue, and after a year of further negotiation they reached an agreement in December 1993 under which the Abells' corporation, Country Cove, took title to the motel in exchange for a $250,000 note secured by a deed of trust on the motel.

According to the Abells, the parties had made the agreement with the understanding that Irwin would work to make the motel marketable by obtaining a rezone and developing a governmentally approved water and septic system, after which the motel could be sold and the profits divided. The water and septic improvements were accomplished in 1995, and the property was successfully rezoned in 1996.

The Abells made payments to the Mays under the contract on a more or less regular basis until late in 1997, after which the Abells made no further payments. In the course of discussions about the possibility of selling the motel in 1998, the Abells discovered that Treva's statement to Irwin about Myron's suicidal condition had been false. Irwin states that the parties "were not on good terms" at that point. Even so, Irwin states that the parties then agreed that Irwin should "sell the business and [the parties] would divide the proceeds according to [their] respective equities."

In November 1998 the Abells sold the motel on an installment basis for $600,000 to a third party, Bob Cook, who took with knowledge of the dispute and subject to the Mays' mortgage interest. At about the same time the Mays commenced nonjudicial foreclosure by serving a notice of default. A deed of trust sale was scheduled for July 1999. The Abells apparently took no steps to become current on payments or otherwise to avoid foreclosure until June 1999 when they brought this suit to enjoin the foreclosure sale, seeking cancellation or rescission of the 1993 contract on grounds of fraud, duress, and breach of fiduciary duty.

The district court ultimately refused to enjoin the foreclosure. Upon retaking title through foreclosure, the Mays sold their interest to the same buyer (Cook) under substantially the same terms, granting a credit for amounts already paid to the Abells.

The district court granted summary judgment for the Mays, ruling that the Abells had failed to state a claim for duress or fraud, that the fraud claim was barred by the statute of limitations, and that the parol evidence rule barred any finding that a fiduciary duty was owed. The Abells appeal, challenging the court's conclusions on all three claims.

## II.

### STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). On review of a district court's grant of summary judgment, this Court exercises free review in determining whether a genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law. *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 745–46, 118 P.3d 75, 77–78 (2005). For purposes of summary judgment, the Court construes the evidence liberally and draws all reasonable inferences in favor of the nonmoving party. *Id.*

## III.

## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON EACH OF THE CLAIMS

### A. *Duress.*

The district court held that the Abells failed to state a claim for duress and that any claim of duress would be defeated regardless because the Abells ratified the contract. It did not reach the question of whether the claim was barred by the statute of limitations.

In *Lomas & Nettleton Co. v. Tiger Enters.*, 99 Idaho 539, 542, 585 P.2d 949, 952 (1978) (quoting *W.R. Grimshaw Co. v. Nevil C. Withrow Co.*, 248 F.2d 896, 904 (8th Cir. 1957)), the Court declared that an actionable claim of duress requires three elements: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." Mere reluctance to accept is not sufficient to constitute duress; the party claiming duress must show that there was no reasonable alternative. *Id.* Moreover, that party must prove causation, that is, that "the duress resulted from [the other party's] wrongful and oppressive conduct" rather than from the party's own necessities. *Id.* This Court stated in *Inland Empire Refineries, Inc. v. Jones*, "[g]enerally, the demand by one party must be wrongful or unlawful, and the party must have no other means of immediate relief from the actual or threatened duress other than by compliance with the demand." 69 Idaho 335, 339–40, 206 P.2d 519, 522 (1949) (citations omitted).

Duress must be proved by clear and convincing evidence. *Lomas & Nettleton*, 99 Idaho at 542, 585 P.2d at 952; *Saint Alphonsus Reg'l Med. Ctr., Inc. v. Krueger*, 124 Idaho 501, 507, 861 P.2d 71, 77 (Ct.App. 1992). Notwithstanding, "traditional I.R.C.P. 56(c) summary judgment principles and standards govern the granting of summary judgment." *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 518, 808 P.2d 851, 855 (1991). In order to survive a motion for summary judgment the plaintiff need not prove that an issue will be decided in its favor at trial; rather, it must simply show that there is a triable issue. *Id.* at 524, 808 P.2d at 861. Because "it is not the trial court's function to weigh the evidence, but to determine whether there is a genuine issue for trial," the Court does not inquire on review of a grant of summary judgment whether the Abells have produced clear and convincing evidence, but only whether the evidence is sufficient to create a triable issue of fact. *Id.* at 517, 808 P.2d at 854; *see also Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368 n. 1, 109 P.3d 1104, 1110 n. 1 (2005).

The Abells claim they were coerced to enter into the 1993 agreement rather than sue for dissolution because of Treva's statement that Myron would commit suicide if they did not accede to his terms—the difference in terms apparently being a dispute over the amount of interest to be charged. Viewing the facts in the light most favorable to the Abells, there is insufficient evidence to create a triable issue of fact regarding duress. Suicide is a wrongful act which Myron had no legal right to commit. As family members the Abells must certainly have felt pressure. However, there are factors which make it unreasonable to conclude that the Abells were compelled to enter into the contract.

There was approximately a year between Treva's statement and execution of the contract during which negotiations took place. There was clearly an adequate opportunity to

determine the reality of the threat. The Abells were represented by counsel during this period which provided an additional buffer between the statement and reality. In *Mountain Elec. Co. v. Swartz,* 87 Idaho 403, 410–11, 393 P.2d 724, 729 (1964), this Court stated that "lapse of time and opportunity for reflection are but additional circumstances to be considered" in evaluating a claim of duress. Because "[a] state of such fear may continue long after the threats that cause it," the elapsed time between threat and act is relevant but not determinative. Id. at 411, 393 P.2d at 729 (quoting Restatement of Contracts § 492 cmt. c (1933)). Likewise, the fact that a party is represented by counsel weighs on whether a party will be found to have acted under coercion, but it will not *per se* defeat a claim of duress. *Cf.* 25 Am.Jur.2d *Duress and Undue Influence* § 25 (2004) (noting that some jurisdictions have held duress cannot exist if a party is free to come and go and to consult with counsel). While the lapse of time and representation of counsel are not conclusive, they are factors to be considered. Treva's false statement as to Myron's state of mind was too vague and insubstantial to constitute duress considering the lapse of time, the opportunity to determine the reality of the threat and representation by counsel.

### B. The district court correctly held that the Abells do not state a claim for fraud.

The district court ruled that the fraud claim was barred by the three-year statute of limitations found at I.C. § 5–218, concluding as a matter of law that the Abells in the exercise of reasonable diligence should have discovered the falsity of Treva's statement well before 1998.

■ The district court also held that the Abells failed to state a claim for fraud, finding that Treva's statement was merely an opinion or prediction about a future event. Because parties are presumed to have formed their own conclusions as to such future events, the court held that any reliance claimed by the Abells could not have been justifiable, particularly since the Abells had over a year to investigate the representation and to fully negotiate the terms before executing the agreement.

■ Nine elements must be proved to sustain an action for fraud: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury. *Lettunich v. Key Bank Nat'l Ass'n,* 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005). The party alleging fraud must plead with particularity the factual circumstances constituting fraud, I.R.C.P. 9(b), and ultimately each of the elements must be proven by clear and convincing evidence. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 518, 808 P.2d 851, 855 (1991). Even so, "traditional I.R.C.P. 56(c) summary judgment principles and standards govern the granting of summary judgment on the issues of fraud and intentional misrepresentation." *Id.* To prevail on this appeal the Abells need to show that they have presented sufficient evidence to create a material issue of fact as to each element.

The district court ruled that "[t]he facts alleged by [the Abells] to constitute fraud— that being a threat or dire prediction by Treva to coerce [the Abells] into executing the note and deed of trust—are not of the type normally associated with allegations of fraud in the inducement." The district court held that the statements made by Treva were merely opinions or predictions about future events, rather than statements of a past or existing fact, and that the Abells were not justified in relying on the statement because it spoke to future events and because they had ample time to investigate the representations before they executed the contract over a year later.

■ "Fraud is never presumed. All of the essential elements thereof must be established by ... clear and convincing evidence, especially where the integrity of a written instrument is assailed." *Barron v. Koenig,* 80 Idaho 28, 39, 324 P.2d 388, 394 (1958). To survive summary judgment, the Abells need only prove a triable issue of fact, but they

have not met that burden. The evidence presented by the Abells in support of their allegation that Treva was lying consists of Irwin's statements that "I also learned at that meeting [in 1998] that Treva had lied to me on the telephone about Myron's condition." Also, "I have since learned those conversations were a hoax, a ploy designed to coerce me into accepting the terms demanded by [the Mays]."

■ "An action for fraud or misrepresentation will not lie for statements of future events. The law requires the plaintiff to form his or her own conclusions regarding the occurrence of future events." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 207, 61 P.3d 557, 564 (2002) (internal citations omitted). Opinions and predictions cannot form the basis of a fraud claim because they do not speak to matters of fact. An exception to the general rule exists where a false prediction or opinion is given with the intent to mislead. "A 'promise or statement that an act will be undertaken ... is actionable, if it is proven that the speaker made the promise without intending to keep it.'" *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 615, 114 P.3d 974, 985 (2005) (quoting *Magic Lantern Prods., Inc. v. Dolsot*, 126 Idaho 805, 807, 892 P.2d 480, 482 (1995)). Likewise, "where a speaker gives an opinion when he is aware of facts incompatible with such opinion, the opinion may amount to a false statement of fact if made with the intention of deceiving or misleading." *Jordan v. Hunter*, 124 Idaho 899, 907, 865 P.2d 990, 998 (Ct.App.1993) (citing *Fox v. Cosgriff*, 66 Idaho 371, 380–81, 159 P.2d 224, 227–28 (1945)). Postulating what Myron might do if he did not get 10% interest in a contract negotiation is too speculative to constitute an existing fact and is too speculative to constitute a false prediction.

Threats can act as inducements, but analysis of that issue is the province of the doctrine of duress, under which the law properly recognizes that the harm stems from the making of the threat itself, not from the genuineness of the threat. Threats by Treva about what Myron would do if the Abells did not accept his terms are not representations upon which the Abells could justifiably rely.

### C. *Constructive fraud.*

■ The Abells also raise the issue of constructive fraud in their reply brief, arguing that they are not obligated to offer proof on all nine elements of fraud due to the fact that Treva violated her duty of integrity as a fiduciary, and that a finding of constructive fraud should therefore attach under *McGhee v. McGhee*, 82 Idaho 367, 371, 353 P.2d 760, 762 (1960). The gist of a constructive fraud finding is to avoid the need to prove intent (i.e., knowledge of falsity or intent to induce reliance), since it is inferred directly from the relationship and the breach. *See* 37 C.J.S. Fraud § 4 (1997) (explaining distinctions between actual fraud and constructive fraud). *McGhee*, cited by the Abells, treats constructive fraud essentially as a synonym for breach of fiduciary duty. The issue was not raised before the reply brief and will not be considered.

### D. *Breach of fiduciary duty.*

The district court granted summary judgment against the Abells on the breach of fiduciary duty claims, finding that the partnership between the parties was terminated by the 1993 contract and that any evidence of a collateral partnership agreement was barred by the parol evidence rule.

■ "To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Sorensen v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, 141 Idaho 754, 760, 118 P.3d 86, 92 (2005) (quoting *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004)).

Under I.C. § 53–321, in effect at the time, "every partner is a fiduciary and a trustee. He must account to the partnership for any benefit or profit derived by him through use of partnership assets, even during the winding up period." *Thomas v. Schmelzer*, 118 Idaho 353, 359, 796 P.2d 1026, 1032 (Ct.App. 1990) (citing *Murgoitio v. Murgoitio*, 111 Idaho 573, 578, 726 P.2d 685, 690 (1986)).

The Abells' allegations of breach of fiduciary duty center around two events: first, the course of negotiating and executing the 1993

contract, including Treva's allegedly false statement; and, second, the Mays' foreclosure of their mortgage interest in 1999.

### 1. Claims of injury arising prior to or contemporaneously with the 1993 contract are time barred.

■ Any claims as to the events surrounding the initial formation of the contract are time barred. The parties were in a fiduciary relationship as partners prior to the 1993 agreement. Any claims arising out of the Mays' conduct in negotiating or inducing the contract must have accrued by the time the contract was executed. Because five and a half years elapsed between the accrual of any claim and the subsequent bringing of this suit, those claims are barred regardless of which statute of limitations applies. The Abells cannot maintain any claims based on breach of fiduciary duty alleged to have occurred in conjunction with the negotiation or execution of the contract.

### 2. The evidence is insufficient to prove any fiduciary relationship after 1993.

■ The Abells allege that the fiduciary relationship between the parties survived the 1993 agreement, and that the foreclosure constitutes a breach of the Mays' fiduciary duty. The district court correctly determined that the written contract between the parties in 1993 expressly terminated the partnership. Idaho Code § 53–331(1)(b), in effect at the time, provides that a dissolution is caused "[b]y express will of any partner when no definite term or particular undertaking is specified." Dissolution likely occurred in 1991 or 1992 when the Mays first notified Abells that they wanted out of the partnership, but in any event it clearly occurred by the time the written contract was executed. Although a partnership continues until the winding up is completed, *see* I.C. § 53–330 (repealed July 1, 2001), it is clear from the terms of the 1993 contract that termination occurred no later than the time the contract took effect. "When one partner purchases the interest of the other, the transaction presumptively includes a final settlement of all partnership indebtedness existing between the partners." *Thomas v.*

*Schmelzer*, 118 Idaho at 359, 796 P.2d at 1032 (citing *Ramseyer v. Ramseyer*, 98 Idaho 47, 558 P.2d 76 (1976); *Bussell v. Barry*, 61 Idaho 350, 102 P.2d 280 (1940)). The Abells have submitted no credible evidence to suggest that any winding up remained to be done after the agreement took effect, and therefore a finding of termination as of 1993 was proper.

■ The former partnership terminated at the time of the contract, but the Abells claim the parties remained in a partnership relationship. Irwin Abell states in an affidavit that upon discovering in 1998 that Treva had lied, the parties subsequently agreed that Irwin should "sell the business and [the parties] would divide the proceeds according to [their] respective equities." In a later affidavit, however, Irwin seems to imply that this understanding was contemporaneous with the 1993 written agreement, stating, in the context of discussing the negotiation of that written agreement, "We had agreed to a payout in 2008 with the understanding that I would work the next years making the motel marketable. . . . It was our plan that once I had accomplished these results, the motel could be sold and the profits divided."

■ "For a factual issue to be material on a motion for summary judgment, it must be placed in dispute by the pleadings." *Frazier v. J.R. Simplot Co.*, 136 Idaho 100, 105, 29 P.3d 936, 941 (2001) (citing *Bennett v. Bliss*, 103 Idaho 358, 647 P.2d 814 (Ct.App. 1982)). Here, the pleadings are at best ambiguous as to the timing of this alleged collateral agreement. The Abells' complaint does allege an agreement that upon the sale of the motel, "the profits would be distributed according to the parties' respective partnership interests." Again, however, the implication is that this was one of the terms of the 1993 agreement. Nowhere is it characterized as a modification or waiver or otherwise as something that would arise subsequent to a written contract.

■ To the extent the Abells' claims amount to an oral partnership agreement collateral to the written agreement, such evidence is clearly inadmissible under the parol evidence rule. "The merger clause is not

merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated." *Howard v. Perry,* 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). The extensive negotiation undertaken by the parties and the comprehensive nature of the agreement itself leave no genuine question on the issue. The district court's finding that the written agreement was intended to represent the entire agreement was proper.

Even if Abells' allegations are construed as setting forth a new partnership agreement formed subsequent to the 1993 agreement so as to avoid the strictures of the parol evidence rule, those allegations are insufficient to survive summary judgment.

The Abells refer in their briefing to the "understanding" that Irwin would continue making the motel marketable, and that they would then sell it and divide the proceeds. It is on the basis of this understanding that the Abells claim the parties were still in a partnership relationship. However, the record does not show a subsequent oral promise attributable to the Mays which could form the basis of an oral partnership agreement. The Abells have failed to show a partnership relationship existed at any time after the 1993 agreement.

The termination of the partnership also terminated the Mays' fiduciary relationship with the Abells. They ceased to be partners and became creditors instead. As this Court recognized in *Black Canyon Racquetball Club v. First National Bank,* 119 Idaho 171, 176, 804 P.2d 900, 905 (1991) and in *Idaho First National Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 277–78, 824 P.2d 841, 852–53 (1991), a debtor-creditor relationship does not give rise to a fiduciary duty. Fiduciary relationships are commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other. *See Idaho First Nat'l Bank, supra.* The Abells and the Mays continued to correspond after termination of the partnership and met occasionally to discuss selling the motel, but there is nothing to suggest that the parties were in anything other than a debtor-creditor relationship. Likewise, "[k]inship alone is generally held not to establish a fiduciary relation." *McDougall v. McFall,* 37 Idaho 209, 218, 215 P. 847, 850 (1923). The Abells emphasize the close relationship between Irwin and Treva as siblings and their common religious upbringing and beliefs, but these facts do not establish the legal relationship of a fiduciary. Dismissal of the claim for breach of a fiduciary duty was proper.

### E. *Attorney fees.*

The 1993 contract contains a broad provision that the losing party, in the event of "any suit or proceedings by either party" "in any way arising out of this agreement or attempting to enforce any right herein granted" shall pay to the prevailing party reasonable attorney fees as determined by the court. The Mays are the prevailing parties and are entitled to attorney fees.

### IV.

### CONCLUSION

The decision of the district court granting summary judgment in favor of the Mays is affirmed. The Mays are awarded costs and attorney fees.

Justices TROUT, EISMANN, BURDICK and JONES concur.