# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38831

IN THE MATTER OF THE ESTATE OF
RICHARD ENRIQUEZ ORTEGA.

---------------------------------------------------------------

DANIELLE QUEMADA, Personal
representative of THE ESTATE OF
RICHARD ENRIQUEZ ORTEGA,

    Petitioner-Appellant,

v.

EFREN A. ARIZMENDEZ, GILBERT
ACOSTA, JR.,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2012 Term

2012 Opinion No. 133

Filed: November 14, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. The Honorable Thomas J. Ryan, District Judge.

The judgment of the district court is <u>affirmed</u>.

Douglas E. Fleenor, Boise, for appellant.

James M. Runsvold, Caldwell, for respondents.

———————————

J. JONES, Justice.

This is an appeal from the district court's grant of summary judgment in favor of the Respondents, Efren Arizmendez and Gilbert Acosta. Danielle Quemada, the daughter and personal representative of Richard Ortega (Decedent), initiated this action to set aside two quitclaim deeds. We affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

The Decedent and Celia Ortega were married in 1985. The two began living apart in 1999, but were not legally divorced until June of 2009. During their marriage, the couple acquired four parcels of real property. On December 30, 2008, the Decedent and Celia Ortega executed four

1

quitclaim deeds, conveying the properties to Acosta.[1] The properties included: a home located at 2081 Hill Road in Homedale (the Hill Road property); a home located at 28901 El Paso Drive in Caldwell (the El Paso Drive property); and two rental properties. At that time the Decedent was residing at the Hill Road property and Celia Ortega was residing at the El Paso Drive property. The day after the deeds were executed, Acosta properly recorded them. On February 24, 2009, Acosta conveyed the Hill Road property to Arizmendez.[2] The El Paso Drive property was later conveyed to Celia Ortega.

At the time of the Decedent's death, November 13, 2009, he had three children: Richard Ortega, Jr., Denise Mota, and Quemada. Elizabeth Ortega[3] was the mother to all three of the Decedent's children. On January 12, 2012, Arizmendez filed a petition to adjudicate the intestacy of the Decedent and to be appointed as the personal representative of the Decedent's estate. The proceeding was assigned to the magistrate court. Thereafter, Quemada filed a petition for appointment as personal representative, which was granted. On April 20, 2010, Quemada filed a verified Petition, invoking the Trust and Estate Dispute Resolution Act (TEDRA), I.C. §§ 15-8-101 to 305, to set aside two of the deeds. She alleged that the deeds to the Hill Road and El Paso Drive properties should be set aside because the Decedent signed them based on Celia Ortega's fraudulent misrepresentations, undue influence, and design to intentionally interfere with inheritance.

Both Arimendez and Acosta answered the Petition, asserting defenses of lack of subject matter jurisdiction under TEDRA and failure to state a claim under I.R.C.P. 12(b). Finding that it lacked jurisdiction over quiet title actions, the magistrate court transferred the proceedings to the district court under I.R.C.P. 8(a)(2).

During a telephonic status conference, the district court granted Quemada leave to file an amended petition narrowing the issues in dispute, and the parties stipulated to waive a jury trial. Quemada filed an unverified[4] Amended Petition on November 9, 2010. Quemada's Amended Petition was identical to the original Petition, except that it left out the intentional interference with inheritance cause of action. On January 3, 2011, the district court ruled, in response to a Rule 12(b) motion of Respondents, that Quemada could not pursue a claim for damages, nor any claim against

---

[1] Gilbert Acosta is the biological child of Celia Ortega from a relationship prior to Celia's marriage to the Decedent.

[2] Arizmendez is Acosta's brother and the biological child of Celia Ortega from a relationship prior to Celia's marriage to the Decedent. At present, Acosta is the record owner of the Hill Road property.

[3] Elizabeth Ortega was the Decedent's wife prior to his marriage to Celia Ortega.

[4] Nevertheless, the district court treated her unverified Amended Petition as if it were sworn testimony.

Celia Ortega, having failed to allege either in the Amended Petition.

The Respondents answered the Amended Petition on January 26, 2010, and shortly thereafter they moved for summary judgment. Their motion was supported by a memorandum and affidavits from Arizmendez, Acosta, and Celia Ortega. A hearing on the summary judgment motion was held on March 25, 2011. Subsequent to the hearing, the district court issued its Memorandum Decision, finding that no genuine issues of material fact existed, and that Respondents were entitled to judgment as a matter of law.[5] Quemada appealed to this Court.

## II.
## ISSUES ON REVIEW

1. Did the district court err by failing to recognize the existence of a presumption of undue influence based on a relationship of confidence between the Decedent and Celia Ortega?
2. Did the district court err in granting summary judgment on the undue influence and fraud claims?
3. Did the district court err by citing *Vreeken v. Lockwood Eng'g, B.V.* for the proposition that, on a motion for summary judgment, the trial court need not scour the record for issues of material fact?
4. Did the district court err by failing to construe all disputed facts regarding the Decedent's intent in favor of Quemada, the non-moving party?
5. Are Respondents entitled to attorney fees on appeal?

## III.
## DISCUSSION

### A.    Standard of Review.

"When reviewing an order for summary judgment, this Court applies the same standard of review that was used by the trial court in ruling on the motion for summary judgment." *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, 101, 218 P.3d 1150, 1162 (2009). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We "construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party." *Nava v. Rivas-Del Toro*, 151 Idaho 853, 857, 264 P.3d 960, 964 (2011). However, where an

---

[5] In its Memorandum Decision granting summary judgment to the Respondents, the district court noted that "[d]emonstrably absent from petitioner's pleadings and affidavits is any evidence to suggest that undue influence and/or fraudulent conduct was perpetrated against the decedent vis-à-vis the home on El Paso [Drive]." Thus, the district court found that summary judgment was warranted as to the El Paso Drive property. Likewise, on appeal, all of Quemada's arguments and evidence relate to the Hill Road property. Thus, we will not disturb the district court's ruling as to the El Paso Drive property.

action will be tried before the court without a jury "[t]he trial judge is not constrained to draw inferences in favor of the non-moving party, but rather the judge is free to arrive at the most probable inferences to be drawn from the uncontroverted evidentiary facts, despite the possibility of conflicting inferences." *Vreeken*, 148 Idaho at 101, 218 P.3d at 1162.

**B.** **The district court properly refused to find a presumption of undue influence based on a relationship of confidence between the Decedent and Celia Ortega.**

Quemada argues the district court erred by not finding that a presumption of undue influence existed between the Decedent and Celia Ortega based on a relationship of confidence. She asserts that under *Krebs v. Krebs*, 114 Idaho, 571, 575, 759 P.3d 77, 81 (Ct. App. 1988), a husband and wife occupy a confidential relationship as a matter of law. Quemada relies on this Court's holding in *McNabb v. Brewster*, 75 Idaho 313, 272 P.2d 289 (1954), to support her argument that a presumption of undue influence existed.

Conversely, Respondents argue that the district court did not err by failing to find a presumption of undue influence. Respondents point out that the presumption is implied between a grantor and a grantee and argue that the presumption cannot be applied in this case because, based on the evidence, the grantor (the Decedent), and the grantee (Acosta), did not have a confidential relationship of any kind. Alternatively, Respondents argue that even if the presumption were found and the burden shifted, the facts in the record disprove two of the four elements of undue influence, overcoming the presumption.

In *Bongiovi v. Jameson*, we stated, "*McNabb* held that if a grantor and grantee have a confidential relationship, and the grantor reposes trust in the grantee, and the evidence otherwise creates an inference of fraud or overreaching, then the burden of persuasion shifts to the proponent (beneficiary) of the conveyance to show by clear and convincing evidence that no undue influence was exercised." 110 Idaho 734, 736, 718 P.2d 1172, 1174 (1986). The deed at issue in *McNabb* conveyed a family farm. *McNabb*, 75 Idaho at 315, 272 P.2d at 298. The deed was executed by a husband and wife and granted 160 acres to Brewster, one of their two daughters. *Id*. The husband was eighty-five and suffered from incurable cancer. *Id*. The wife, eighty-nine, was sickly, bedridden, and suffered from hallucinations. *Id*. Neither could read nor write. *Id*. This Court found that both were "infirm, forgetful, childish and senile." *Id*. As a result of their poor physical and mental condition, Brewster moved in with her parents for the purpose of caring for them. *Id*. at 316, 272 P.2d at 299. After residing with her parents for three months,

4

Brewster took them to a real estate office where they conveyed the farm to her in return for continued care. *Id*. The Court noted that Brewster frequently cursed at her mother and called her vile names and that Brewster exercised "complete dominion" over her mother. *Id*. The mother was subsequently hospitalized and Brewster terminated care giving. Shortly thereafter, the mother passed away. *Id*. at 318, 272 P.2d at 301. The Court in *McNabb* held that the circumstances were sufficient to indicate the presence of fraud and overreaching, triggering a presumption of undue influence. *Id*. at 326, 272 P.2d at 306.

*McNabb*'s presumption of undue influence has been criticized and substantially eroded by subsequent decisions. *See Bongiovi*, 110 Idaho 734, 718 P.3d 1172; *Kelley v. Wheyland*, 93 Idaho 736, 471 P.2d 590 (1970); *Keenan v. Brooks*, 100 Idaho 823, 606 P.2d 473 (1980). These cases have so limited the circumstances where the presumption of undue influence is applied that a deed "contestant must now come forward with so much evidence of overreaching to obtain the presumption of undue influence that, were that quantum of evidence available, the contestant would almost certainly prevail without the presumption." *Bongiovi*, 110 Idaho at 737, 718 P.2d at 1175. We need not winnow through those limiting circumstances, however, because one thing all of the cases have in common is that the presumption, or whatever is left of it, only applies where there is a confidential relationship between a grantor and a grantee. That is not the case here. There is no evidence in the record of a confidential relationship between the Decedent and Acosta. Indeed, one of the affidavits submitted by Quemada asserts that the Decedent did not trust Acosta. The district court did not err in declining to invoke a presumption of undue influence.

### C.  The district court properly granted summary judgment on the undue influence and fraud claims.

Quemada argues that conflicting facts were submitted with respect to the Decedent's intent in deeding the Hill Road property, precluding the district court from making conclusive findings at the summary judgment stage on the undue influence and fraud claims. Quemada asserts that, although the judge was permitted to make inferences as the trier of fact, such inferences can only be made from uncontroverted facts, and in this case, the facts regarding the Decedent's intent were in dispute. Specifically, Quemada points out that Acosta indicated the Decedent's intent was for his step-granddaughter, Desire,[6] to receive the Hill Road property, while Elizabeth Ortega testified that

---

[6] Desire is the daughter of Arizmendez.

5

the Decedent's intent was for his three children to get the Hill Road property.

Conversely, Respondents argue that the trial judge did not make any inferences from disputed facts. Respondents assert that no facts were provided by Quemada to support a contrary holding on the claims, and that, Quemada only submitted "unsworn conclusory statements not based on personal knowledge."

The district court did not make any inferences from disputed facts regarding the Decedent's intent. In ruling on Respondents' summary judgment motion, the district court addressed and disposed of Quemada's claims of undue influence and fraud without ever making a finding or a holding as to the Decedent's intent. Rather, it disposed of Quemada's claims on other grounds.

### 1. Undue Influence.

With respect to Quemada's claim of undue influence, the district court found that "the uncontroverted evidentiary facts fail to show that the decedent was a person susceptible to influence" and, on that basis, held that Quemada's claim of undue influence was without merit. The district judge, relying solely on uncontroverted facts, further stated, "it is clear from the record that that the first element of undue influence, a person who is subject to influence, is without evidentiary support." The court acknowledged that Quemada proffered evidence indicating the Decedent had limited education,[7] but found that Quemada offered "no evidence to show that the [Decedent] was not capable of making decisions regarding the management of his property up to the time of his death."

For a finding of undue influence with respect to a deed transfer, four elements are required: "(1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." *Gmeiner v. Yacte*, 100 Idaho 1, 6–7, 592 P.2d 57, 62–63 (1979). In *Gmeiner*, the Court addressed each of the four parts of undue influence and made sure to label each as an "element." *Id*. at 6–8, 595 P.3d at 62–64. An "element" is "[a] constituent part of a claim that must be proven for a claim to succeed." BLACK'S LAW DICTIONARY 359 (8th ed. 2004). Thus, failure by a party to support one of the elements of a claim will result in a dismissal of the entire claim.

Whether a grantor is "subject to influence" of another concerns the grantor's general state of mind and whether he is "of a character readily subject to the improper influence of others." *Id*.

---

[7] Quemada stated in her Amended Petition that, "Decedent was an uneducated man who was totally unfamiliar with real estate transfer matters. Decedent did not finish high school and was a truck driver by occupation."

at 7, 592 P.2d at 63. In determining if an individual is subject to the influence of another, whether the grantor was "aged, sick or enfeebled" is relevant. *Id*. Also relevant is whether the grantor cannot handle business affairs, is illiterate, has undergone marked deterioration of mind and body shortly before the grant, or has suffered the trauma of recent death in the family. *Id*. However, this Court has made it very clear that a grantor is not subject to influence "simply because the grantor is old, physically infirm or uneducated." *Id*. at 8, 592 P.2d at 64.

Quemada has proffered no evidence that the Decedent was a person "subject to influence."[8] The only piece of relevant evidence submitted to the trial court was that the Decedent had a modest education. However, this Court specifically noted in *Gmeiner* that lack of education alone is not sufficient to show that a grantor was "subject to influence." No evidence was presented to the district court that would indicate that the Decedent was incapable of managing his business affairs, was illiterate, or had undergone mental or physical deterioration just prior to making the grant at issue. There is no indication in the record that the Decedent was unaware of the identity of the grantee in the deeds at the time they were signed. The Decedent took no action between the time the deeds were signed on December 30, 2008, and the time of his death on November 13, 2009, to recover title to the property from Acosta. Affidavits submitted both by a person describing himself as the Decedent's best friend from childhood and the Decedent's ex-wife, Elizabeth Ortega, indicated frequent conversations with the Decedent up until the time of his death, and nothing in the affidavits indicates a frailty of mind or mental deterioration. Thus, we affirm the district court's grant of summary judgment as to Quemada's undue influence claim because, based on uncontroverted facts unrelated to intent, the Decedent was not a person subject to influence.

## 2. Fraud.

With respect to Quemada's claim of fraud, the district court stated, "based upon the record before this court, [Quemada] has failed to establish a prima facie case for fraud." The court's conclusion is based on uncontroverted facts irrespective of the Decedent's intent. The district court cited several grounds for summarily dismissing Quemada's fraud claim: (1) the person who made the alleged misrepresentation, Celia Ortega, was not a party to the case below; (2) Quemada utterly failed to establish that Celia Ortega knowingly made a false and material misrepresentation; and,

---

[8] Quemada offered evidence that Celia Ortega was unusually savvy in the real estate context due to her business of leasing properties. However, Celia's alleged savvy is irrelevant as to the first element of the undue influence analysis.

(3) absolutely no evidence was presented by Quemada as to the Decedent's ignorance of the falsity allegedly perpetrated by Celia Ortega.

Fraud is composed of nine separate elements: "(1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006). The party alleging fraud must state with particularity the circumstances constituting fraud. I.R.C.P. 9(b). Although a heightened pleading standard exists with respect to claims of fraud, the "traditional I.R.C.P. 56(c) summary judgment principles and standards govern the granting of summary judgment on the issue[] of fraud." *Country Cove*, 143 Idaho at 600, 150 P.3d at 293. Thus, in order to find that summary judgment was improperly granted by the district court, Quemada must show that sufficient evidence was presented to the district court "to create a material issue of fact as to each element." *Id.* at 600, 150 P.3d at 293. Failure to support one of the nine elements of a fraud claim will result in a dismissal of the entire claim.

Quemada has not proffered sufficient evidence addressing the nine prima facie elements of fraud to survive Respondents' summary judgment motion. An inquiry into the first element of fraud, a misrepresentation, illustrates that Quemada's Amended Petition is fatally deficient. Element one goes completely unsatisfied because Quemada has failed to allege, at any stage of the proceedings, that either of the Respondents ever made a misrepresentation to the Decedent or his estate. This alone would be sufficient to support the entry of summary judgment. However, element five (the speaker's intent to induce reliance) and element six (the hearer's ignorance of the falsity of the statement), as noted by the district court, also go completely unaddressed by Quemada, both in her Amended Petition and in her briefing to this Court. Thus, we affirm the district court's grant of summary judgment as to Quemada's fraud claim because, based on uncontroverted facts unrelated to intent, Quemada has not offered evidence to address all nine of the prima facie elements of fraud.

**D.** **The district court did not err by citing *Vreeken v. Lockwood Eng'g, B.V.* for the proposition that, on a motion for summary judgment, the trial court need not scour the record for issues of material fact.**

Quemada argues that the district court erred by failing to consider all of the evidence before

8

granting Respondents' summary judgment motion. Quemada's argument is very narrow and is based solely on the district court's recitation of the standard of review. Specifically, Quemada argues that by citing *Vreeken*[9] for the proposition that a "trial court is not required to search the record looking for evidence that may create a genuine issue of material fact," the court erred. According to Quemada, *Vreeken* was not applicable below because the "respondents in *Vreeken* had failed to contest" a motion for summary judgment, while in this case Quemada "contested the summary judgment motion."

Respondents argue that Quemada's narrow construction of the *Vreeken* holding is unfounded because this Court in *Vreeken* did not limit the holding to cases in which the motion goes uncontested, and because the cases relied upon by *Vreeken* were cases in which the motions for summary judgment were contested.

We stated in *Vreeken* that "the trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." *Id*. at 103−04, 218 P.3d at 1164–65 (quoting *Esser Electric v. Lost River Ballistics Tech., Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008)). The appellants in *Vreeken* "admittedly failed to contest the respondents' motion for summary judgment." *Id*. at 103, 218 P.3d at 1164. Nonetheless, the *Vreeken* appellants argued that the court should have searched the record for genuine issues of material fact. *Id*. The Court held that the appellants' contention was unfounded and contrary to prior case precedent. *Id*. In its ruling, this Court did not place any limitations on the proposition that the district court is not required to search the record looking for evidence to create a genuine issue of material fact. *See id*. at 103–04, 218 P.3d at 1164. Indeed, the *Vreeken* Court lifted the above-quoted language from *Esser Electric*, where the summary judgment motion was contested.

In this case, Quemada has not asserted that the district court failed to properly consider the record before it. Rather, Quemada only asserts that it was improper for the district court to cite *Vreeken* in its standard of review. Quemada's argument is not tenable because the *Vreeken* holding applies to all cases in which a motion for summary judgment is being considered, regardless of whether the party opposing the motion contests it. Thus, whether a motion for summary judgment goes uncontested or is fervently fought, the district court, in ruling on the motion, need not scour

---

[9] The district court's only citation to *Vreeken* was in its Standard of Review section. The rule articulated was never specifically applied in the district court's Memorandum Decision.

the record for evidence of a genuine issue of material fact. Accordingly, the district court's citation of *Vreeken* was proper and did not constitute error.

**E.      The district court did not err by failing to construe disputed facts regarding the Decedent's intent in favor of Quemada, the non-moving party.**

Quemada argues that the Decedent's intent is a disputed fact and thus, under the summary judgment standard of review, must be construed in favor of the non-moving party. Quemada further asserts that the Decedent's intent is disputed because "affidavit testimony from two witnesses" indicate that the Decedent's intent was to leave the Hill Road property to his three children. In response, Respondents argue that the record and claims made in this case do not support Quemada's contention that the Decedent's intent, with respect to the disposition of the Hill Road property, was a disputed material fact.

The district court did not err by failing to construe disputed facts of intent in favor of Quemada because the district judge granted Respondents' motion for summary judgment on the bases of uncontroverted facts alone–irrespective of the Decedent's intent. Quemada's Amended Petition asserts two bases as to why the quitclaim deed conveying the Hill Road property to Acosta should be set aside: (1) undue influence, and (2) fraud. The district court granted summary judgment on both claims based upon the lack of evidence in the record to support critical elements of such claims. Therefore, the court determined that the Decedent's intent, whatever it may have been, was irrelevant. We find no error in this regard.

**F.      Respondents are entitled to attorney fees on appeal.**

Respondents claim attorney fees on appeal under I.A.R. 41 and I.C. §§ 12-121 and 15-8-208. Respondents assert that they are entitled to attorney fees in this matter because this appeal has been brought and pursued frivolously, unreasonably, and without any foundation. Respondents further argue that by relying on TEDRA, Quemada has conceded that the fee provision of I.C. § 15-8-208 applies. Quemada did not address whether attorney fees on appeal are warranted.

Quemada did invoke TEDRA in her initial Petition and in her superseding Amended Petition. She stated she was petitioning the court "pursuant to TEDRA, I.C. 15-8-101, et seq." The Respondents contended in their answers to the Petition that the magistrate court lacked subject matter jurisdiction under TEDRA. The magistrate court apparently determined it was without jurisdiction to hear the case, stating that "[e]ven if TEDRA were properly invoked by agreement of all concerned parties (which is not the case), the parties cannot confer subject

matter jurisdiction on this court where none otherwise exists." Regardless of what the court meant regarding TEDRA, it is clear that Quemada asserted in her Amended Petition that TEDRA was her basis for seeking relief. Therefore, we will apply TEDRA's attorney fee provision, I.C. § 15-8-208.[10] That provision allows the appellate court, in its discretion, to award attorney fees to any party from a variety of sources. I.C. § 15-8-208(1). The Respondents have prevailed on appeal and we therefore exercise our discretion to award them their reasonable attorney fees. The fees will be assessed against the assets of the estate, to the extent that there are any assets remaining therein, and if the award exceeds the value of assets in the estate, against the personal representative. I.C. § 15-8-208(a) and (b).

### IV.
### CONCLUSION

The judgment of the district court is affirmed. Defendants are awarded their costs and attorney fees on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

---

[10] In an analogous situation, this Court has awarded attorney fees against a party who has alleged a claim for relief that comes within the purview of a fee statute. In the case of I.C. § 12-120(3), we have awarded fees against a party who sought relief under the contract branch of the statute, "even though no liability under a contract was established," and against a party who sought to recover on a commercial transaction, "regardless of the proof that the commercial transaction alleged did, in fact, occur." *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2001).

11