985 P.2d 669

Valrena K. TURPEN, personal representative of John E. Turpen, deceased, Plaintiff–Appellant,

v.

Steve M. GRANIERI, Defendant,

and

Douglas Pecha and Jane Doe Pecha, husband and wife, Defendants–Respondents.

No. 24008.

Supreme Court of Idaho,
Boise, April 1999 Term.

Aug. 2, 1999.

Van Camp & Bennion, P.S., Spokane, for appellant. Dustin Deissner argued.

Ramsden & Lyons, Coeur d'Alene, for respondents. Marc A. Lyons argued.

TROUT, Chief Justice.

Valrena Turpen (Valrena) appeals from the trial court's ruling granting Douglas Pecha's (Pecha) motion for summary judgment on her claim for the wrongful death of her son, John Turpen (Turpen).

## I.

### FACTUAL AND PROCEDURAL HISTORY

In November 1994, Turpen, a student at North Idaho College (NIC), died of alcohol poisoning while a guest at a home owned by Pecha but leased to two NIC students, Matt Paulsen and Christian LaRese. Pecha had originally purchased and resided in the home while he attended NIC. Because Pecha later moved to Western Washington, his father, a wrestling coach at NIC, managed the property for Pecha and was responsible for leasing the home to Paulsen and LaRese. Paulsen, LaRese, and Turpen were all members of the NIC wrestling team. On the night in question, Turpen, who was of legal age, came over to the house and participated in a party being held there and apparently consumed a large quantity of alcohol which ultimately led to his death.

Affidavits filed in this case reflect that neighbors had made occasional complaints over the years about parties conducted at the home. A neighbor, Hana Oldham, asserted that she had complained to Pecha about loud, all night parties prior to the time Paulsen and LaRese became tenants. According to Oldham, Pecha responded that there was nothing he could do and that the tenants were his friends. Other neighbors, June Browning and Sheila Goeke also witnessed parties being held at the house. Browning stated that at one point she complained directly to Pecha and, on the night in question, called the Coeur d'Alene police two or three times. Goeke claims to have called the police, the city attorney, the president of NIC, and the NIC wrestling coach to try to stop the parties. Neither Browning or Goeke, however, stated that they had complained directly to Pecha specifically about Paulsen and LaRese.

In November 1996, Valrena brought a wrongful death suit claiming that Pecha, knowing that the residence had a reputation as a party house, negligently rented the home to college students and negligently failed to monitor and control his tenants' and their guests' activities, thus, causing Turpen's death. Pecha filed a motion for summary judgment asserting that he had neither the ability nor the duty to control the activities of his tenants. Ruling from the bench, the trial court granted Pecha's motion and Valrena appeals.

## II.

### STANDARD OF REVIEW

Our review of a trial court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Friel v. Boise City*

*Hous. Auth.,* 126 Idaho 484, 887 P.2d 29 (1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court, on review, liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 869 P.2d 1365 (1994). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion should be denied. *Id.* at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, then only a question of law remains over which this Court exercises free review. *Id.*

## III.

## DISCUSSION

On appeal, Valrena argues that the trial court erred in granting Pecha's motion for summary judgment. Valrena argues that factual questions exist concerning whether Pecha negligently rented the home to Paulsen and LaRese and negligently failed to control the activities of the tenants and their guests and consequently, summary judgment was not proper.

■ Under I.C. § 5–311, when the negligence of another causes a person's death, the decedent's heirs or personal representative may maintain an action for damages against the wrongdoer. However, an heir may only recover for wrongful death if the decedent would have been able to recover. *See, e.g., Bevan v. Vassar Farms, Inc.,* 117 Idaho 1038, 1041, 793 P.2d 711, 714 (1990). Thus, the heir must prove that the wrongful act or negligence of the defendant caused the injury and resulting death. *Id.* To prove a cause of action for negligence, a plaintiff must establish

(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.

*Orthman v. Idaho Power Co.,* 126 Idaho 960, 962, 895 P.2d 561, 563 (1995).

### A. General Duty to Exercise Ordinary Care.

Valrena argues that Pecha breached his duty of ordinary care by renting the home to Paulsen and LaRese. She argues that Pecha knew the home had gained a reputation as a party house for NIC students, NIC wrestlers in particular, and that "dangerous" parties had been held there in the past. Valrena contends that Pecha, nonetheless, rented the home to NIC student wrestlers, Paulsen and LaRese, and in doing so, breached his duty of care causing Turpen's death.

■ The existence of a duty is a question of law over which this Court exercises free review. *Freeman v. Juker,* 119 Idaho 555, 556, 808 P.2d 1300, 1301 (1991). Every person, in the conduct of his business, has a duty to exercise ordinary care to "prevent unreasonable, foreseeable risks of harm to others." *Sharp v. W.H. Moore Inc.,* 118 Idaho 297, 300, 796 P.2d 506, 509 (1990). In determining whether a duty will arise in a particular context, the Court has identified several factors to consider.

[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rife v. Long,* 127 Idaho 841, 846, 908 P.2d 143, 148 (1995) (quoting *Isaacs v. Huntington Mem'l Hosp.,* 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653, 658 (1985)).

■ The Court, in *Sharp,* outlined the role of foreseeability in determining whether a duty exists in a particular case.

Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. Thus, foreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonable prudent person would take such into account in guiding reasonable conduct.

*Sharp,* 118 Idaho at 300–01, 796 P.2d at 509–10. Moreover, foreseeability relates to the general risk of harm rather than "the specific mechanism of injury." *Id.* at 301, 796 P.2d at 510. "We only engage in a balancing of the harm in those rare situations when we are called upon to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized." *Rife,* 127 Idaho at 846, 908 P.2d at 148. While we have previously recognized that a landlord may have responsibilities for assuring that the rented premises are safe, we have imposed that duty only as to the physical premises. Here, we are asked to impose a responsibility for activities taking place on the rented property which in no way implicate the physical condition of the house or surrounding property.

■ Pecha stated in his affidavit that he had received no complaints about the existing lessees, Paulsen and LaRese, or their guests. Valrena does not contradict this. While he had in the past been told of some parties at the home involving alcohol, all Pecha can be charged with knowing is that neighbors had complained about parties held by prior tenants who were NIC students and that Paulsen and LaRese were also NIC students. Under the facts presented here, there is no indication that Pecha could foresee that by renting to Paulsen and LaRese a social guest would be killed by virtue of the guest's own lawful actions.

While the harm to Turpen was undoubtedly great, Pecha's only ability to prevent the harm would be by refusing to rent the premises at all. In examining the other policy considerations relating to the imposition of a duty, we find no basis for imposing a duty on Pecha to thoroughly screen tenants, or refuse to rent the premises to college students. Therefore, we hold that Pecha had no duty under the very limited facts presented here.

## B. Affirmative Duties Arising Under Special Relationships.

■ Valrena next argues that Pecha contributed to Turpen's death by negligently failing to control the activities of the tenants or otherwise protect Turpen. Idaho follows the general rule that, absent special circumstances, one does not have a duty to control the conduct of another. *Sterling v. Bloom,* 111 Idaho 211, 225, 723 P.2d 755, 769 (1986). Those circumstances include instances where

(a) a special relation exists between the actor and a third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives the other a right to protection

RESTATEMENT (SECOND) TORTS § 315 (1966).

■ Examples when an affirmative duty to control may arise include a parent's duty to control his child, an employer's duty to control an employee, or a law enforcement officer's duty to control a dangerous prisoner. *See, e.g., id.* §§ 316, 317, 319. The common element in each of these is knowledge of an unreasonable risk of harm and the right and ability to control the third party's conduct. Additionally, a person can also assume a duty to act for the protection of another. *Bowling v. Jack B. Parson Companies,* 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990). The underlying policy here arises from a person voluntarily assuming a position, and by filling that position another can reasonably rely on that person to act with reasonable care and provide protection from unreasonable risks of harm.

■ Based on the facts presented here, we find no voluntary assumption of any duty by Pecha to protect Turpen or any

other guests who might come on the rented premises to engage in legal activities. We also do not find on these facts any right or ability by Pecha to directly control the conduct of Paulsen and LaRese, apart from some responsibilities arising out of a lease agreement. Thus, on these facts, we decline to impose any duty on Pecha arising from any special relationship.

### C. Attorney Fees on Appeal.

 Pecha requests attorney fees on appeal under I.C. § 12–121, I.R.C.P. 54(e)(1), and I.A.R. 41. Attorney fees are proper in these circumstances only if we are left with the abiding belief that the appeal was brought frivolously, unreasonably, or without foundation. *Minich v. Gem State Dev., Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Valrena's counsel readily acknowledged that the argument he makes is an extension of existing Idaho tort law. While we do not agree that a duty exists in this case, we do not find the argument frivolous, unreasonable, or without foundation.

### IV.

### CONCLUSION

For the above reasons, we affirm the decision of the district judge granting Pecha's motion for summary judgment. Costs, but not attorney fees, are awarded to Pecha pursuant to I.A.R. 40.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL, concur.