**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 41897**

| | |
|---|---|
| ROBERT HUMPHRIES and BECKY HUMPHRIES, husband and wife </br> Plaintiffs-Appellants, </br> v. </br> EILEEN BECKER, an individual; ALLEN and JANE BECKER, husband and wife, </br> Defendants-Respondents, </br> and </br> SHEILA B. ADAMS, an individual; JERRY HINES, an individual; CENTURY 21 RIVERSIDE REALTY, an Idaho general partnership; JOHN DOES 1-10; and CORPORATIONS XYZ and/or other legal entities, </br> Defendants. | Twin Falls, November 2015 Term </br></br> 2016 Opinion No. 5 </br></br> Filed: January 22, 2016 </br></br> Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Cassia County. Hon. Jonathan Brody, District Judge.

The district court's ruling on summary judgment as to Eileen Becker is vacated. The district court's ruling on summary judgment as to Allen Becker and Jane Becker is affirmed. The award of attorney fees to Eileen Becker is vacated. The district court's grant of attorney fees and costs to Allen and Jane Becker is affirmed and we further grant attorney fees and costs on appeal to Allen and Jane Becker.

Worst, Fitzgerald & Stover, PLLC, Twin Falls, attorneys for appellant. Kirk Melton argued.

Wright Brothers Law Office, PLLC, Twin Falls, attorneys for respondent. Brooke Redmond argued.

_____

W. JONES, Justice

**I. NATURE OF THE CASE**

1

This appeal arises out of a transfer of real property located in Cassia County, Idaho (the "Property"). Buyers, Robert and Becky Humphries ("Appellants" or the "Humphries"), accuse seller, Eileen Becker ("Eileen"), her son, Allen Becker ("Allen"), and daughter-in-law, Jane Becker ("Jane" and collectively, "Respondents") of: (1) fraud though misrepresenting, concealing, and/or failing to disclose material information with regards to (a) the sources of water to the Property and (b) the Property's sprinkler/irrigation system; and (2) violating the Idaho Condition Disclosure Act codified in Idaho Code section 55-2501, *et. seq.* (the "Disclosure Act"). Appellants also challenge the district court's grant of attorney fees to Respondents. Both Appellants and Respondents seek attorney fees on appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Property at issue consists of a 2,500 square foot house on a one-acre lot located at 1063 S. Hwy. 27 in Burley, Idaho. While the Property itself is not used for farming purposes, it is located in an area where farming is prevalent. Across the street from the Property is a large farm (the "Farm"), which Allen sold to Lake Mead Enterprises in 2006. The Farm is currently being leased to a local farmer, Brent Bean.

*1. Sprinkler/Irrigation System*

The Property includes a sprinkler/irrigation system, which was originally wired to be automatic. However, of the seven sprinkler heads, only five are currently connected to the computer system needed to run them automatically. It would cost between $100 and $1000 to fully automate the Property's sprinkler system.

*2. Water Sources*

At all relevant times, the Property has drawn water from two separate sources. The first source of water is a shared well (the "Shared Well") located on an adjacent property owned by Allen and Jane (the "Shared Well Property"). The Shared Well provides water sufficient for all inside uses and limited outside uses. The Shared Well does not provide water to the Property's sprinkler/irrigation system and is not connected to do so. The underground water line—a one-inch line—that connects the Shared Well with the Property was not designed to transport enough water to run the sprinkler/irrigation system, which would require at least a three-inch line.

The second source of water to the Property is an underground line that connects to a well and pivot located on the Farm (the "Farm Well"). The Farm Well provides all water used for the Property's sprinkler/irrigation system. The Farm Well is entirely owned by Lake Mead

2

Enterprises, which left control of the well to Brent Bean for so long as he leases the Farm. Since his lease began in 2006, Brent Bean has allowed the owners of the Property to utilize water from the Farm Well free of charge. All parties agree, however, that the owners of the Property have no legal right to water from the Farm Well, and that Brent Bean could cut off the water supply from the Farm Well at his discretion.

There are two possible sources of water for the Property's sprinkler/irrigation system other than the Farm Well. First, the Property's sprinkler/irrigation system could be connected to the Shared Well for an estimated $7,000 plus labor costs. While this would technically allow the sprinkler/irrigation system to function, the amount of water provided by the Shared Well would not be sufficient to simultaneously run the sprinklers and provide water inside the house. Second, the owners of the Property could drill an additional well on the Property. A new well would provide enough water to sustain the sprinkler/irrigation system, however drilling such a well would cost an estimated $30,000.

*3. The Sale*

From 1982 until late 2008, the Property served as the primary residence of Allen and Jane. Over the course of 26 years they became highly familiar with the Property, including the sources of water to the Property and its sprinkler/irrigation system. During that time, Allen's mother Eileen resided on the Shared Well Property, which she owned. In 2008, Eileen, who was approaching 80 years of age, decided to leave the Shared Well Property and move to an assisted living facility. Because the Property and the Shared Well Property were of roughly equivalent value, Eileen agreed to trade ownership of the Shared Well Property to Allen and Jane in exchange for ownership of the Property, which she intended to sell in order to fund her assisted living expenses. At no point did Eileen ever live on the Property. Unlike Allen and Jane, she knew very little about the Property generally.

In order to aid with the sale of the Property, Eileen hired local realty company Century 21 Riverside Realty. She was represented during the sale by real-estate agents Sheila Adams ("Adams") and Jerry Hines ("Hines"). On October 7, 2008, Adams met with all three of the Beckers in order to assist Eileen in filling out an RE-25 Seller's Property Condition Disclosure Form (the "Disclosure Form") mandated by the Idaho Association of Realtors, and to gather information necessary to draft a listing to post on a multiple listing service (the "MLS Listing"). RE-25 Seller's Property Condition Disclosure Forms and MLS listings are documents drafted by

3

the seller of a piece of property or his or her realtor containing basic information about the property. These documents are provided to potential purchasers and are relied on by those purchasers in determining whether or not to make an offer.

There is some debate over what was said at the October 7, 2008, meeting. Allen testified that at that meeting he explicitly told Adams that there were two sources of water for the Property—the Shared Well and the Farm Well—and that the Shared well was not connected to the sprinkler/irrigation system. Adams, on the other hand, testified that: (1) one of the Beckers told her that the Shared Well could supply water for the property's sprinklers and that the Farm Well was not necessary to meet the Property's water needs; (2) Allen had told her that the use of the Farm Well would not continue after the sale; and (3) no one told her that the sprinkler/irrigation system was not connected to the Shared Well. Adams further testified that she did not find out that the Shared Well was not connected to the sprinkler/irrigation system until well after the sale had occurred. Neither Allen nor Adams recalled if anything was said at the October 7, 2008 meeting regarding whether the sprinkler system was fully automatic.

The Disclosure Form contains only one section providing information on the sources of water to the Property. The section consists of three rows: (1) "Domestic Water"; (2) "Irrigation Water"; and (3) "Property Sewer." For each row the seller has five possible boxes which he or she can check: (1) "Public System"; (2) "Community System"; (3) "Private System"; (4) "Cistern"; and (5) "Other." In the Disclosure Form, "Private System" is checked for all three rows. The Disclosure Form was signed and initialed by Eileen. It was also signed by the Humphries. The Disclosure Form was not signed by Allen or Jane.

Shortly after the October 7, 2008 meeting, Adams drafted the MLS Listing. In the section of the MLS Listing providing information on water sources, Adams wrote "Shared Well" and "Well shared with Becker home to the South on agreement being drawn." There is no mention of the Farm Well in the MLS Listing. In the section of the MLS Listing regarding lawn sprinklers, Adams wrote "Auto" and "Full." On or around October 7, 2008, Eileen authorized Adams to post the MLS Listing, however Eileen was not provided with the MLS Listing and she did not review it. Neither Allen, nor Jane ever reviewed or were provided with the MLS Listing prior to its posting.

In mid-October 2008, Allen and Jane moved to Yuma, Arizona. Thereafter, they had no further meetings with Eileen's real estate agents. Allen and Jane did, however, field calls from

4

Jerry Hines (who at that point had replaced Sheila Adams as lead agent on the sale) when he was unable to get in touch with Eileen. Allen testified that on a couple of occasions Hines told him about offers on the Property that he then conveyed to Eileen; however, all decisions regarding those offers were made by Eileen and not Allen or Jane.

During the winter of 2008, Hines was contacted by the Humphries' real-estate agent, Marvis Brice. He provided Brice with the Disclosure Form and the MLS Listing, which were in turn provided to the Humphries. Neither Brice nor the Humphries were ever informed by Adams or the Beckers of the existence of the Farm Well. At the time of purchase, Brice and the Humphries believed that all water, including the water for the sprinkler/irrigation system, came from the Shared Well.

In early 2009, having reviewed the MLS Listing and the Disclosure Form, and having visited the house on multiple occasions, the Humphries submitted an offer to buy the Property, which Eileen accepted. Throughout this process the Humphries never met or spoke with Eileen directly; communicating exclusively through their respective real estate agents. Shortly thereafter, the Humphries hired an inspector to review the Property. The inspector did not test the sprinkler system due to the cold weather. Following the inspection, the Humphries negotiated a price reduction based on certain deficiencies identified by the inspector.

The Humphries and Eileen finalized the sale on February 10, 2009, for $161,000. Allen and Jane never spoke directly to the Humphries or their agents prior to closing on the Property.

Contemporaneously with the sale closing, the Humphries entered into a water rights agreement with Allen and Jane regarding access to water from the Shared Well (the "Joint Well Use Agreement"). The Joint Well Use Agreement provides that "[b]uyer shall have the right to use the water produced by the well located on the Becker property for domestic purposes." The Joint Well Use Agreement does not define "domestic purposes," and at no point does the Joint Well Use Agreement make any reference to sprinklers, irrigation, or the Farm Well. Despite the lack of language regarding irrigation or sprinklers in the Joint Well Use Agreement, the Humphries' real estate agent, Marvis Brice, assured the Humphries that under the Joint Well Use Agreement, water would be provided for their garden and their yard.

4. *The Lawsuit*

It was not until the spring following the sale of the Property that the Humphries discovered the existence of the Farm Well. During the preceding winter Allen had opened the

valves connecting to the Farm Well in order to avoid any damage to the pipes. Accordingly, when the Farm turned its water on for the spring season, the sprinklers on the Property started running. When the sprinklers didn't automatically shut off, Robert Humphries contacted Allen to ask how they operate. It was at that time that Allen explained to Robert that the sprinklers were connected to the Farm Well and not to the Shared Well. Allen further explained that while the Humphries had no right to the water from the Farm Well, Brent Bean would be willing to allow them to use the water for free. He suggested that the Humphries provide Bean with a $100 gift certificate at the end of the farming season as a thank you for using his water.

Robert Humphries was "surprised and shocked" at this revelation; however, the Humphries refrained from taking legal action that summer in order to test the arrangement. After a number of occasions in which Brent Bean threatened to shut off their access to the Farm Well, including once when the Humphries suggested building a fence along their property line, the Humphries decided to sue.

On July 1, 2011, the Humphries filed a complaint against Eileen, Marvis Brice and Advantage 1 Realty, LLC (Brice's agency).[1] The complaint asserted that Eileen had engaged in fraud and misrepresentation for statements made in relation to the sources of water to the Property and that therefore the sale should be rescinded.

On May 1, 2012, after the completion of discovery, the Humphries successfully moved to amend their complaint to add Allen and Jane as defendants to the action. In the amended complaint, the Humphries alleged that Allen and Jane had acted as Eileen's agents during the sale, imputing to them a duty to disclose the true sources of the sprinkler/irrigation water. The amended complaint also contained new allegations of fraud and misrepresentation with respect to statements in the MLS Listing regarding whether the sprinkler/irrigation system was automatic.

On June 27, 2012, the Beckers moved for summary judgment on all claims. They argued that: (1) the Beckers were not liable for any misrepresentation in the MLS Listing because (a) they had accurately explained the existence of the second well to Adams at the October 7, 2008 meeting, and (b) they had never reviewed the MLS Listing prior to it being posted and accordingly they were unaware of its contents; (2) they had never made any affirmative representation that the Shared Well would provide sprinkler/irrigation water to the Property; (3)

---

[1] All claims against Marvis Brice and Advantage 1 Realty, LLC were settled out of court.

6

there was never any intent to defraud or deceive; (4) the Humphries relied on the advice of their real estate agent and not on the MLS Listing or Disclosure Form in forming their inaccurate belief that the Shared Well was the only source of water to the Property; (5) the Humphries failed to plead or raise any issues regarding the amount of damages; (6) the Beckers disclosed all relevant facts to their real estate agents, and are not responsible for any failure by those agents to disclose required information; (7) Allen and Jane were not Eileen's agents; and (8) the Humphries' complaint failed to plead fraud with particularity.

On December 13, 2012, the district court entered an order granting the Becker's motion for summary judgment. The court held that: (1) The Humphries had pled fraud with sufficient particularity with regards to statements in the MLS Listing and Disclosure Form; (2) the Beckers did not make any false representations in either the MLS Listing or the Disclosure Form; (3) any duty that the Beckers may have had to disclose the existence of the Farm Well was satisfied by the Joint Well Use Agreement; (3) the representation in the MLS Listing that the sprinkler system was automatic could not serve as the basis for fraud; and (4) the Disclosure Form did not violate the Disclosure Act.

Regarding the sources of water, the district court identified only two affirmative representations provided by the Humphries that might serve as the basis for fraud: (1) the boxes on the Disclosure Form that Eileen had marked "private system"; and (2) the representations in the MLS Listing that water was provided by a "shared well." Because both the Shared Well and the Farm Well are private systems and shared wells, the court reasoned, those statements were not false.

The court further concluded that even if the characterization of the water source as a "shared well" was "potentially misleading," the representation in the Joint Well Use Agreement that the Shared Well was for "domestic purposes" was sufficient to satisfy any duty to disclose that may have arisen.

With regard to the sprinkler system, the court held that the representation in the MLS Listing that the sprinkler/irrigation system was fully automatic was not material. The court reasoned that the minimal cost to reattach the sprinklers would not be regarded as important by a reasonable party in the sale of a $160,000 piece of property.

Finally, the court held that Eileen satisfied the Disclosure Act by delineating the sources of water as "private systems," which is more than what is required under the law.

7

On January 2, 2013, the Humphries moved for reconsideration of the district court's summary judgment order, arguing that the district court had misapplied the summary judgment standard by failing to draw all reasonable inferences in their favor.

On February 15, 2013, having reconsidered the issues, the district court entered an order confirming its original order of summary judgment.

On March 21, 2014, the district Court granted $57,128.93 to the Beckers for costs and attorney fees.

The Humphries now appeal.

### III. ISSUES PRESENTED ON APPEAL

1. Did the district court err in finding that, as a matter of law, no issue of material fact existed as to the Humphries' fraud claims?

2. Did the district court err in finding that, as a matter of law, no issue of material fact existed as to the Humphries' Idaho Property Condition Disclosure Act claims?

3. Did the district court err in granting attorney fees to the Beckers?

4. Are the Humphries entitled to attorney fees and costs on appeal?

### IV. STANDARD OF REVIEW

**A.    Summary Judgment**

> On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party.

*Golub v. Kirk-Hughes Dev., LLC*, 158 Idaho 73, 75–76, 343 P.3d 1080, 1082–83 (2015) (quoting *Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014)).

### V. ANALYSIS

**A.    The district court did not err in finding that, as a matter of law, no issue of material fact existed with respect to the Humphries' fraud claims against Allen and Jane.**

*1. Allen and Jane did not serve as Eileen's agents with respect to the sale of the Property.*

An agent is a person who has been authorized to act on behalf of a principal towards the performance of a specific task or series of tasks. *Knutsen v. Cloud*, 142 Idaho 148, 151, 124 P.3d 1024, 1027 (2005). An agency relationship is created through the actions of the principal who

8

either: (1) expressly grants the agent authority to conduct certain actions on his or her behalf; (2) impliedly grants the agent authority to conduct certain actions which are necessary to complete those actions that were expressly authorized; or (3) apparently grants the agent authority to act through conduct towards a third party indicating that express or implied authority has been granted. *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985). Agency relationships are limited in scope to the express, implied, and apparent authority granted by the principal.[2] Only acts by the agent that are within the scope of the agency relationship affect the principal's legal liability. RESTATEMENT (THIRD) OF AGENCY § 1.01 (AM. LAW INST. 2006). In addition, where an agency relationship exists, the principal has a right to control the agent. Where a party acts in concert with the principal but is not under his or her control, an agency relationship does not arise. *Knutsen*, 142 Idaho at 151, 124 P.3d at 1027.

There were two acts performed by Allen and Jane that Appellants allege serve as the basis for an agency relationship. First, Allen and Jane passed certain information between Eileen and Eileen's real estate agent. Second, Allen and Jane provided information to Eileen and Adams regarding the Property so that they could draft the Disclosure Form and MLS Listing.

Neither of these acts was sufficient to create an agency relationship with respect to the sale. At no point does it appear that Allen and Jane were under Eileen's control or that she had any right to direct their actions. Rather, the alleged facts indicate that Allen and Jane acted as independent third parties. That Eileen may have benefitted from their actions is not enough to create an agency relationship.

Appellants cite a number of cases for the proposition that an agent's knowledge is imputed to the principal. *See, e.g.*, *Allen v. Phoenix Assur. Co.*, 14 Idaho 728, 95 P. 829 (1908); *J.I. Case Co. v. Bird*, 51 Idaho 725, 726, 11 P.2d 966, 967 (1932). These cases are cited for the purpose of establishing that even if Eileen were unaware of the continued use of the Farm Well or the manual nature of the sprinkler/irrigation system, Allen's awareness of those things should be imputed to her. Because no agency existed, such imputation would be improper. Eileen had knowledge only to facts of which she was actually informed.

---

[2] This Court has previously viewed the question of whether an agency relationship exists as a question of fact for the jury to determine. *John Scowcroft & Sons Co. v. Roselle*, 77 Idaho 142, 146, 289 P.2d 621, 623 (1955). Whether facts sufficient to constitute an agency relationship exist is indeed a question of fact for the jury, however, whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration.

*2. As a matter of law, no issue of material fact existed with respect to the Humphries' fraud claims against Allen and Jane.*

Summary judgment is appropriate only if the evidence in the record shows that there is no genuine issue of material fact raised in the pleadings and that the moving party is therefore entitled to judgment as a matter of law. *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002). If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

Appellants have alleged two different types of fraud on appeal: (1) fraud arising out of an affirmative misrepresentation; and (2) fraud arising out of the breach of a duty to disclose.

Fraud is composed of nine separate elements: "(1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006).

Omission of information may constitute fraud when a duty to disclose exists. *Sowards v. Rathbun*, 134 Idaho 702, 707, 8 P.3d 1245, 1250 (2000); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 522, 808 P.2d 851, 859 (1991); *Tusch Enterprises v. Coffin*, 113 Idaho 37, 43, 740 P.2d 1022, 1028 (1987);. A party may be under a duty to disclose: (1) if there is a fiduciary or other similar relationship of trust and confidence between the two parties; (2) in order to prevent a partial statement of the facts from being misleading; or (3) if a fact known by one contracting party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it. *Sowards*, 134 Idaho at 707, 8 P.3d at 1250. With respect to fraud, it is the court that determines whether, as a matter of law, the facts asserted would give rise to a duty to disclose. *Printcraft Press, Inc. v. Sunnyside Park Util., Inc.*, 153 Idaho 440, 452, 283 P.3d 757, 769 (2012).

We hold that Allen and Jane are not liable to Appellants for any affirmative misrepresentations made in the Disclosure Form or the MLS Listing and Allen and Jane had no relationship with Appellants such that a duty to disclose could have arisen.

First, Appellants have not provided evidence that either Allen or Jane made any affirmative statements of fact—false or otherwise—to the Humphries or their agents regarding the sprinkler/irrigation system or the sources of water to that system. The only alleged

affirmative misrepresentations that were made to the Humphries or their agents with respect to the sprinkler/irrigation system, and the sources of water thereto, were made by: (1) Eileen, through the Disclosure Form; and (2) Sheila Adams, through the MLS Listing. Neither the Disclosure Form nor the MLS Listing were drafted or signed by Allen or Jane. At no point did either of them attest to the veracity of those documents to the Humphries. Accordingly, it cannot be said that the Humphries reasonably relied on any affirmative misrepresentation of fact made to them by Allen or Jane.

Second, Allen and Jane did not have any duty to the Humphries to disclose the existence of the Farm Well. With respect to the sale, Allen and Jane themselves were neither parties to the contract nor were they Eileen's agents. Accordingly, no duty could arise under the first and third theories of fraud by omission. The fact that a third-party to a sale has knowledge of a material fact is not sufficient to create a duty to disclose. The knowledge must be held by the party entering the contract for a duty to arise. Likewise, Allen and Jane did not make any statement of fact to the Humphries which could constitute "a partial statement of the facts." Where no partial statement of fact was made, a duty to disclose cannot arise under the second theory of fraud by omission.

Conversely, Allen and Jane did have a contractual relationship with the Humphries with respect to the Joint Well Use Agreement, which was signed and verified by Allen. Misleading partial statements of fact in the Joint Well Use Agreement could serve as the basis for a duty to disclose.

We hold that the Joint Well Use Agreement did not contain any misleading partial statements of facts. It stated only that water would be provided for domestic uses. It never stated or implied that the Shared Well would provide water sufficient for irrigation purposes; nor did it contain any implication that the Shared Well was the only source of water to the property. Because the Joint Well Use Agreement did not serve to mislead as to the sources of water to the Property, it did not create a duty to disclose the existence of the Farm Well.

**B.** **The district court erred in finding that, as a matter of law, no issue of material fact existed as to the Humphries' fraud claims against Eileen.**

*1. Appellants have raised an issue of material fact as to whether certain statements made in the MLS Listing constituted fraud.*

Under section 54-2093(1) of the Idaho Code "a client . . . whether buyer or seller, shall not be liable for a wrongful act, error, omission or misrepresentation of his broker or his broker's

11

licensees unless the client had actual knowledge of *or reasonably should have known* of the wrongful act, error, omission or misrepresentation." I.C. § 54-2093(1) (emphasis added).

Under the "Water" heading in the MLS Listing, Adams wrote "Shared Well." A jury could find that the use of a singular noun in this statement is misleading because it implies that there is a single shared well and not two separate wells each of which is "shared."

In the section of the MLS Listing entitled "Lawn Sprinklers," Adams wrote "Auto" and "Full." A jury could find that this statement is also misleading because it implies a fully functioning automatic sprinkler system, not a disconnected sprinkler system that could be automatic with an additional $100 to $1000 investment.

Eileen argues that she never saw the MLS Listing—a fact that is not disputed—so she neither could have "had actual knowledge" of, nor "reasonably should have known of" the misrepresentations contained therein. However, Eileen was present at the October 7, 2008 meeting—another fact that is not disputed—at which the Beckers provided Adams with information for the purpose of drafting the MLS listing. Drawing all facts and inferences in favor of the non-moving party, the district court should have adopted Adams' account of that meeting as fact, including her testimony that the Beckers told her that the Shared Well would serve as the one and only source of water for the irrigation system.

The district court further should have inferred, for the purposes of summary judgment, that because Eileen was present at the October 7, 2008 meeting, she heard and understood everything that was said to Adams. Accordingly, Eileen should have known that Adams would only list the Shared Well as a source of water in the MLS Listing, and that she would not list the Farm Well, which she was allegedly told would not continue to provide water. With all facts and inferences drawn in favor of the non-moving party, a jury could find that Eileen "should have known" that the MLS Listing would misrepresent the sources of water to the Property.

With respect to whether the sprinkler/irrigation system was automatic, on the other hand, Appellants did not provide any evidence in the record with respect to what Adams was told at the October 7, 2008 meeting. Without such evidence, there is no basis on which Eileen "should have known" that the MLS would include misrepresentations to that extent.

We hold that the district court erred in its finding that no issue of material fact existed as to whether the statement in the MLS Listing that water was provided by a "Shared Well" could constitute fraud. The district court did not err in finding that no issue of material fact existed as

to whether the statement in the MLS Listing that the sprinklers were "Auto" or "Full" could constitute fraud.

   2. *Appellants have raised an issue of material fact as to whether Eileen is liable for statements made in the Disclosure Form.*

As stated above, fraud is composed of nine separate elements: "(1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006). The party bringing the allegation of fraud must provide evidence sufficient to prove each element. *Quemada v. Arizmendez*, 153 Idaho 609, 615, 288 P.3d 826, 832 (2012).

On the Disclosure Form, Eileen checked three boxes indicating a "Private System" in the separate categories of "Domestic Water," "Irrigation Water," and "Property Sewer." The options other than "Private System," that were available to Eileen on the Disclosure Form were "Public System," "Community System," "Cistern," and "Other." Appellants allege that Eileen should have checked the box marked "Other" in order to indicate the existence of multiple systems, and that checking "Private System" constituted fraud.

On summary judgment, the district court held that the Disclosure Form was not false or misleading because the Farm Well is a "private system"; and, furthermore, if the Disclosure Form was false or misleading, Eileen did not know it to be so. In coming to these conclusions, the district court erred by not taking all facts and inferences in favor of the non-moving party.

Taking Adams' testimony as fact for the purposes of summary judgment, Eileen knew that the Shared Well and Farm Well were separate systems, and further knew that the Humphries would not have any right to the water from the Farm Well. Indeed, Adams testified that at the October 7, 2008 meeting, the Beckers informed her that the use of water from the Farm Well would not continue after the sale. At the same time, Allen testified that at the meeting he told Adams that the Shared Well was not connected to the sprinkler/irrigation system. If both of these facts are taken as true, then the court must infer that Eileen knew as of the October 7, 2008, meeting that neither potential source of water would serve the sprinkler/irrigation system. If Eileen knew that there was no source of water to the sprinkler/irrigation system, yet she still checked "Private System" with respect to irrigation water then a jury could find that she made a false statement (i.e. she implied that there was a source of sprinkler/irrigation water when in fact

13

there was no source). The fact that Brent Bean decided to allow the Humphries to use his water is not relevant to this determination, because at the time the Disclosure Statement was signed no source of water for the sprinkler/irrigation system existed.

3. *This court need not address whether the sprinkler/irrigation system was material to the sale of the Property.*

As provided above, Eileen is not liable for false or misleading statements made in the MLS Listing unless she "should have known" that they would be in the MLS Listing. Because Appellants have not provided evidence that the Beckers told Adams that the sprinklers were automatic, there is no material issue of fact as to whether or not Eileen knew statements to that effect would be included. Accordingly, this Court need not review whether an automatic sprinkler system was material to the sale.

**C.    The district court erred in finding that no issue of material fact existed regarding whether Eileen violated the Disclosure Act.**

Appellants argue that by failing to convey that there were two sources of water to the Property, the Disclosure Form provided by Eileen did not satisfy the Disclosure Act. Idaho Code section 55-2502 provides that the purpose of the Disclosure Act is to "require sellers of residential real property as defined in this chapter to disclose certain defects in the residential real property to a prospective buyer." I.C. § 55-2502. Idaho Code section 55-2508 provides an example disclosure form that, by definition, meets all of the requirements of the Disclosure Act. The example disclosure form contains only a single line with respect to the sources of water, requiring the seller to disclose "problems" with any "Well." I.C. § 55-2508. It follows from Idaho Code section 55-208 that while sources of water to the Property do not necessarily have to be disclosed in a disclosure form, any problems or defects with those sources of water would need to be expressly listed.

Taking all facts and inferences in favor of Appellants, Eileen was not only aware that the Humphries would have no right to water from the Farm Well, and that the Shared Well did not provide sprinkler/irrigation water, but she also believed that the water from the Farm Well would no longer be provided to the Property.

A jury could find that the lack of a right to water from a given water source constitutes a problem with that water source. Further, not having any access at all to water for sprinkler/irrigation purposes could certainly constitute a problem with the Property that would need to be disclosed. We hold that the district court erred in granting summary judgment with

14

regard to whether or not the information in the Disclosure Form was sufficient to satisfy the Disclosure Act.

**D.     The grant of attorney fees and costs as to Allen and Jane is affirmed, however, the grant of attorney fees to Eileen is hereby vacated unless and until she prevails at trial.**

"Where there is a valid contract between parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs." *Farm Credit of Spokane v. W.W. Farms, Inc.*, 122 Idaho 565, 569, 836 P.2d 511, 515 (1992). Likewise, attorney's fees on appeal can be awarded to a prevailing party pursuant to a purchase and sale agreement. *Bolognese v. Forte*, 153 Idaho 857, 867, 292 P.3d 248, 258 (2012).

The real estate contract for the sale of the Property, entered into between Eileen and the Humphries, contains the following language:

> If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

This language is sufficient to mandate attorney's fees in any suit between the parties to that sale contract.

We hold that Allen and Jane properly prevailed at the district court; however, they are not parties to the underlying sale contract. Because they are not parties to the sale contract, they are not entitled to the benefits of the contract, including fees under the language cited above. Thus the district court erred in granting them attorney's fees under the language of the sale contract. The district court did not err, however, in granting attorney's fees and costs to Allen and Jane under Idaho Code section 12-120(1). Under Idaho Code section 12-120(1) reasonable attorney's fees are permitted as part of costs to the prevailing party where the underlying pleading requests under $35,000 in damages. Allen and Jane are the prevailing parties on summary judgment, which is hereby affirmed with respect to them. The pleading specified that the amount requested was under $35,000. Accordingly, attorney's fees and costs were properly granted to Allen and Jane by the district court.

Because attorney's fees were proper with respect to Allen and Jane under Idaho Code section 12-120(1), attorney's fees on appeal are proper under Idaho Code section 12-120(5),

which provides that in all instances where a party is entitled to reasonable attorney's fees under Idaho Code section 12-120, that party is also entitled to attorney's fees on appeal.

Conversely, while Eileen was eligible for attorney's fees under the provisions of the sale contract, the grant of attorney's fees to Eileen by the district court is hereby vacated as she is no longer the prevailing party.

No attorney's fees on appeal are granted to either Eileen or Appellants at this time. The district court may award attorney's fees accrued in relation to this appeal at the conclusion of this case.

Appellants are directed to pay Allen and Jane's costs on appeal. Eileen is directed to pay Appellants' costs on appeal.

## VI. CONCLUSION

We hereby vacate the district court's ruling on summary judgment as to Eileen. We uphold the district court's ruling on summary judgment as to Allen and Jane. We uphold the district court's grant of attorney's fees and costs to Allen and Jane and further grant attorney's fees and costs to Allen and Jane on appeal. We vacate the district court's grant of attorney's fees to Eileen.

Chief Justice J. JONES and Justice HORTON, CONCUR.

Justice EISMANN, specially concurring.

I concur in the majority opinion. The Idaho Property Disclosure Act provides that "[n]either the transferor or transferor's agents shall be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if the error, inaccuracy or omission was not within the personal knowledge of the transferor." I.C. § 55-2511(1). However, the Act does not preempt other claims for relief based upon the common law. I.C. § 55-2514. Under the common law:

> An owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available. If he does not know the correct information, he must find out or refrain from making representations to unsuspecting strangers. "Even honesty in making a mistake is no defense as it is incumbent upon the vendor to know the facts."

*Sorenson v. Adams*, 98 Idaho 708, 715, 571 P.2d 769, 776 (1977).

Justice BURDICK joins in this special concurrence.