## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 44091

| | |
|---|---|
| BRYAN N. HENRIE, | ) |
| | ) Boise, April 2017 Term |
| Plaintiff-Appellant, | ) |
| | ) 2017 Opinion No. 56 |
| v. | ) |
| | ) Filed: May 31, 2017 |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, | ) Stephen W. Kenyon, Clerk |
| | ) |
| | ) |
| Defendant-Respondent. | ) |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Judgment is affirmed. No attorney's fees are awarded on appeal. Costs on appeal are awarded to Respondent.

Cooper & Larsen, Chartered, Pocatello, attorneys for appellant. Javier Gabiola argued.

Moffatt Thomas, Pocatello, attorneys for respondent. Bradley J. Williams argued.

_____

JONES, Justice

### I. NATURE OF THE CASE

This case arises out of injuries suffered by Bryan N. Henrie ("Henrie") while he was participating in a community service event organized by the Mormon Helping Hands ("Helping Hands"), a priesthood-directed program run by the Church of Jesus Christ of Latter-day Saints (the "Church"). Henrie asserts on appeal that the district court erred when it dismissed his tort claim on summary judgment. We affirm the judgment.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In June of 2012, a fire broke out in the Charlotte Creek area of Pocatello. Once the fire had been put out, Helping Hands conducted a wide-scale effort to clean up the burned area.

Henrie was a member of the Paradise Ward of the Church, where he was the president of the Elder's Quorum. In late June of 2012, Henrie was contacted by Bishop Fred Zundel and instructed to mobilize the members of the Quorum to aid in the cleanup effort. Henrie characterizes the Bishop's instruction as "an order," which he felt "compelled" to follow due to his status in the Church.

On July 14, 2012, Henrie traveled to Century High School, where Helping Hands had set up a staging area for volunteers to sign in to participate in the cleanup. When he arrived at the high school a person[1], whom Henrie took to be a representative of the Church, handed him a smock with the Helping Hands logo on it. Henrie testified as follows:

> Q: Okay. And did she say anything about it?
>
> A: Whoever it was–I remember getting it. It was handed to me and I remember saying this is really big. And they said, well it's all we've got left, because apparently, they'd been picked clean–well, not–I don't know how clean because, you know, I can't vouch for how many were left. But at that point they said this is all we've got left.
>
> Q: Okay. And it looked big to you, too big for you, is that what you're saying?
>
> A: It looked really big. And, I mean, I don't know what their standard was, but, I mean, to me it seemed–it could have been a lot tighter fit–like a lot tighter fitting.
>
> . . .
>
> Q: And was there any discussion about whether you had to wear it or should wear it or–
>
> A: Yes, there was.
>
> Q: What was that discussion?
>
> A: I was told that I had to wear it to participate in the cleanup. It was required.

Henrie was assigned to work with a crew on a property off Gibson Jack road. He spent the day felling burned trees and rolling or throwing the wood down an embankment on the property to be hauled away later. Later that day, Henrie was attempting to throw a tree stump down the embankment when it caught on his smock. He was pulled down the embankment by the stump, severely injuring his right knee in the process.

On July 11, 2014, Henrie filed a complaint against the Church. Therein, Henrie asserted that "[a]t the very least, Defendant had a duty not to supply Plaintiff with gear or clothing that

---

[1] In his testimony, Henrie admitted that he does not remember who this person was, or even if the person who gave him the smock was male or female.

would put him or his bodily safety in danger or ultimately harm him . . . Defendant breached this duty of care." He further asserted that "Defendant owed a duty to Plaintiff to use reasonable care in nominating, training, and supervising any and all of the clean-up organizers and volunteers, including those who spoke with and directed Plaintiff."

On December 16, 2015, the Church filed a motion in limine to exclude evidence. Therein, the Church requested that the district court exclude any testimony given by Henrie with respect to statements made by the volunteer who gave him his smock. The Church argued that such statements were offered "to prove that the Church 'mandated' that everyone wear a smock in order to participate." Accordingly, the Church concluded, such statements were offered to prove the truth of the matter asserted and therefore were inadmissible hearsay. The Church preemptively argued that those statements do not qualify as an admission of a party opponent because "[w]hen the declarant is unknown or unidentifiable a plaintiff cannot show that the declarant was an agent of the principal."

Concurrently with its motion in limine, the Church filed a motion for summary judgment on all of Henrie's claims. Therein, the Church asserted that: (1) "the Church had no duty to foresee or predict the accident . . .  because [it was] a 'freak' accident[] that [was] not 'reasonably' foreseeable and [didn't] impose unreasonable risks of harm"; and (2) "Henrie cannot adduce admissible evidence to support his proximate cause elements of his claims . . . Henrie cannot adduce any admissible evidence that the Church forced him to wear the smock."

On March 16, 2016, the district court entered a memorandum decision and order, in which it found that: (1) "[t]here is no question the alleged statements made by the unknown and unidentifiable volunteer are hearsay . . . [and] the record is utterly devoid of any evidence of an agency relationship between the unidentifiable person handing out the smocks and the Church [so the statements do not qualify as admissions of a party opponent]"; (2) "[u]nder the facts presented here, there is nothing to indicate the Church could foresee or reasonably be expected to anticipate the type of harm that occurred here . . . [s]o this Court cannot find a basis for imposing a duty on Defendant in this instance"; (3) "there is no special duty between the Church and Mr. Henrie"; and (4) "the Plaintiff cannot demonstrate the existence of a genuine issue of material fact regarding the cause of his injuries because he has failed to offer admissible evidence to support his theory of causation."

Concurrent with the order the district court entered summary judgment dismissing the case. Henrie appeals.

### III. ISSUES ON APPEAL

1. Did the district court err in determining that no issue of material fact existed as to whether the Church had a special relationship with Henrie such that it had an affirmative duty to control or protect him?

2. Did the district court err in determining that no issue of material fact existed as to whether the Church's duty of care extended to the causes of Henrie's injury?

3. Did the district court err in granting the Church's motion in limine with respect to the statements of the unidentified volunteer?

4. Did the district court err in determining that no issue of material fact existed as to Henrie's theory of proximate cause?

5. Is either party entitled to attorney's fees on appeal?

### IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party.

*Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016) (quoting *Golub v. Kirk–Hughes Dev., LLC*, 158 Idaho 73, 75–76, 343 P.3d 1080, 1082–83 (2015)).

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000).

*State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016).

### V. ANALYSIS

**A.  The district court did not err when it found that the Church did not have a special relationship with Henrie such that it had an affirmative duty to control or protect him.**

4

Under Idaho law, "one owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.*" *Doe v. Garcia*, 131 Idaho 578, 581, 961 P.2d 1181, 1184 (1998) (quoting *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980)) (emphasis in original). Conversely, "[t]here is ordinarily no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility. An affirmative duty to aid or protect arises only when a special relationship exists between the parties." *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999).

> A special relationship can have two separate but related aspects. The Restatement (Second) of Torts states that "(a) a special relation exists between the actor and a third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection." *Turpen v. Granieri*, 133 Idaho 244, 248, 985 P.2d 669, 673 (1999) (quoting RESTATEMENT (SECOND) TORTS § 315 (1966)). Thus, having control over someone or a duty to protect that person is indicative of a special relationship.

*Beers v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*, 155 Idaho 680, 686, 316 P.3d 93, 96 (2013).

> This Court has listed examples of individuals having a duty to control another as "a parent's duty to control his child, an employer's duty to control an employee while at work, or a law enforcement officer's duty to control a dangerous prisoner." *Turpen*, 133 Idaho at 248, 985 P.2d at 673. "The common element in each of these is knowledge of an unreasonable risk of harm and the right and ability to control the third party's conduct." *Id*. Thus, a special relationship imposing a duty to control another's conduct requires a foreseeable risk and the right and ability to control that person's conduct.

*Id.*[2]

> We only engage in a balancing of the harm in those rare situations when we are called upon to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized. . . . Determining whether a duty will arise in a particular instance involves a consideration of policy and the weighing of several factors which include:

---

[2] Other "[e]xamples of the types of 'special relationships' which give rise to a duty to aid or protect include duties owed by: 1) a common carrier to its passengers; 2) an innkeeper to his guests; 3) a possessor of land who holds his land open to members of the public who enter upon the land in response to his invitation; and 4) one who takes custody of another." *Coghlan*, 133 at 401, 133 Idaho at 313.

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Rife v. Long*, 127 Idaho 841, 846, 908 P.2d 143, 149 (1995) (quoting *Isaacs v. Huntington Mem'l Hosp.*, 695 P.2d 653, 658 (Cal. 1985)).

Accordingly, in *Coghlan*, when presented with a tort action filed by a university student who was injured when she fell, while intoxicated, from the third-story fire escape of her sorority house, this Court held that a neither a university nor a sorority have "the kind of special relationship creating a duty to aid or protect adult students from the risks associated with the student's own voluntary intoxication." *Coghlan*, 133 Idaho at 400, 987 P.2d at 312. This Court reasoned that "college students today are no longer minors; they are now regarded as adults in almost every phase of community life. . . . [T]he modern American college is not an insurer of the safety of its students" *Id.* at 399–400, 987 P.2d at 311–12.

In *Beers*, this Court held that neither the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints (the "COP"), nor the Autumn Faire Ward of the Church of Jesus Christ of the Latter-day Saints (the "Ward"), had a special relationship to a minor who was injured jumping off a bridge into a river while attending a campout organized by the Ward. 155 Idaho at 687–88, 316 P.3d at 99–100. This Court reasoned that "there is no evidence that the Ward had any right or ability to control [the injured minor's] actions. The Ward did not have the ability to compel [the injured minor's] attendance at the campout or the Ward-planned activities." *Id.* at 687, 316 P.3d at 99. The Court also determined that it was not in the public interest to recognize a special relationship using the framework described in *Rife*:

> We are unable to ascribe moral blame to the COP for this incident. We can, however, ascertain negative consequences to the community that would result from imposing a duty and resulting liability upon religious organizations to members of their faith. The result would be a powerful disincentive to organized fellowship activities.

*Id.* at 687–88, 316 P.3d at 99–100.

Henrie asserts on appeal that the district court's finding that no special relationship existed was error. He argues that a special relationship existed between himself and the Church arising out of the alleged fact that he "did not have the discretion to ignore" the "assignment" from Bishop Zundel to participate in the community service project. He further asserts that "the Church had the right to control Mr. Henrie's conduct" as evidenced by the fact that "Mr. Henrie [] never said no to his bishop's requests." Finally, he argues (albeit without actually identifying any legal issues) that "all of these issues were for the jury to decide, not the District Court." We find that these arguments are without merit.

The district court did not err in determining that there was no special relationship between Henrie and the Church sufficient to create an affirmative legal duty for the Church to control Henrie's actions or to protect him from harm. Despite Henrie's assertions to the contrary, the facts alleged in this case indicate that Henrie's conduct was at all times completely voluntary and that he could have chosen not to participate in the cleanup project. This Court takes as true, the fact that Henrie felt obligated to participate in the cleanup out of a sense of duty to the Church. However, Henrie's subjective sense of obligation is fundamentally different from the type of control that gives rise to a special relationship. A parent has a special relationship with a child because that parent has a legal right and duty to control that child's actions. The same is true of a police officer with respect to a criminal in custody, and, to a more limited extent, an employer to an employee. Conversely, the Church had no right to control Henrie's actions here. As in *Beers*, the Church organized an activity for which participation was voluntary. A member of the Church voluntarily participated and was injured. The fact that he felt duty bound to participate does not mean that his participation was not voluntary or that the Church had a right to control him. It follows that no special relationship existed.

Furthermore, public policy factors weigh against this Court creating an affirmative duty for the Church to control and protect Henrie in this case. The injury here, as explained below, was not foreseeable. There is no moral blame that can be ascribed to the Church for organizing an opportunity for its members to provide a much needed community service and encouraging them to participate. Finally, there could be severe costs to the community if such a duty were recognized because it would have the effect of chilling the willingness and ability of Helping Hands and other charitable organizations to provide beneficial community services.

**B.** **The district court did not err in finding that no issue of fact existed as to whether or not the Church had a general duty to prevent Henrie's injury.**

> A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State Dep't of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007) (quoting *O'Guin v. Bingham County*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005)).

*Stoddart v. Pocatello School Dist. #25*, 149 Idaho 679, 683–84, 239 P.3d 784, 788 (2010).

> In general, it is held that one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury. . . .
>
> > Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury.
>
> In determining whether such duty has been breached by the allegedly negligent party, his conduct is measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing.

*Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980) (internal quotations and citations omitted).

> Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. Thus, foreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonably prudent person would take such into account in guiding reasonable conduct.

*Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300–01, 796 P.2d 506, 509–10 (1990) (citations omitted).

"The question whether a risk of harm is foreseeable is generally a question for the trier of fact." *Caldwell v. Idaho Youth Ranch, Inc.*, 132 Idaho 120, 125, 968 P.2d 215, 220 (1998) (citing *Orthman v. Idaho Power Co.*, 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997)). However, "when the undisputed facts can lead to only one reasonable conclusion, this court may rule upon the issue of foreseeability as a matter of law." *Mico Mobile Sales & Leasing, Inc. v. Skyline*

*Corp.*, 97 Idaho 408, 412–13, 546 P.2d 54, 58–59 (1975) (citing *Munson v. State, Dep't of Highways*, 96 Idaho 529, 531 P.2d 1174 (1975)).

Accordingly, this Court has described its task when confronted with a foreseeability determination on summary judgment as follows:

> In ruling on the correctness of the summary judgment entered in this case, we must determine whether (appellants') injury and the manner of its occurrence (were) so highly unusual that we can say, as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.

*Alegria*, 101 Idaho at 620, 619 P.2d at 138 (internal quotation and citation omitted).

Henrie asserts that even if he did not have a special relationship with the Church, the Church still owed him a general duty not to act in a way that would create an unreasonable, foreseeable risk of harm. He argues that the Church violated this duty. We disagree.

In *Alegria*, this Court definitively established that a party owes a duty to every person to use reasonable care to avoid causing foreseeable injuries. 101 Idaho at 619, 619 P.2d at 137. This duty does not, by its own language, extend to injuries that cannot be reasonably anticipated or foreseen. *Id.* Accordingly, whether a party owed a general duty of care with respect to a particular injury will depend on whether or not that injury was a foreseeable result of the party's actions. *Id.* A foreseeability determination can be made on summary judgment where the injury caused is "so highly unusual that we can say, as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." *Id.* at 620, 619 P.2d at 138.

We agree with the district court's conclusion that a severe knee injury is a highly unusual consequence of the actions taken by the Church's alleged agent (*i.e.* providing an oversize smock to a volunteer in a post-fire cleanup community service project and instructing that volunteer to wear the smock). A reasonable person making an inventory of possible harms would have difficulty imagining the circumstances by which Henrie's knee injury came to pass. Further, while it is not dispositive that Helping Hands' long history of providing smocks has not resulted in any similar injuries, it does support the conclusion that such an injury is not likely to occur.

On appeal, Henrie asserts that the district court erred in assessing foreseeability because it assessed the specific mechanism of injury rather than the general risk. He argues that "it is the inherent risk of injury of working on a hillside, throwing large logs down a hill, and the risk of

9

harm associated with that . . . that is relevant." Henrie is incorrect on this point. While it is the general risk of injury, rather than the specific injury, which must be analyzed, the general risk of injury in this case is not the risk associated with throwing logs down a hill. Throwing logs down a hill was Henrie's voluntary action and was not an action on the part of the Church. The Church's action, which is the basis of Henrie's negligence theory, was providing Henrie an oversize smock and telling him that he had to wear it (with the knowledge that he would be participating in the cleanup). It was making Henrie wear the smock, not the inherent risk involved in the cleanup project, which forms the foundation of the negligence claim here; and, it is that action from which the injury must have been foreseeable.

Henrie's knee injury is not a foreseeable result of making Henrie wear a smock, even an oversized one for a cleanup project. Accordingly, we affirm the district court's conclusion on summary judgment that no duty existed based on a lack of foreseeability.

**C.     This Court need not address whether or not the district court abused its discretion when it found that Henrie's testimony regarding the Church's alleged agent was hearsay.**

We need not reach this issue because the district court did not err when it found on summary judgment that no duty existed which could serve as the basis of liability.

**D.     This Court need not address whether or not the district court erred when it found on summary judgment that Henrie could not prove that the Church's actions were the proximate cause of his injuries.**

We need not reach this issue because the district court did not err when it found on summary judgment that no duty existed which could serve as the basis of liability.

**E.     Neither party is entitled to attorney's fees on appeal.**

Neither party is entitled to receive attorney's fees on appeal. This action was not pursued or defended frivolously or without foundation.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment to the Church. No attorney's fees are awarded on appeal. Costs to the Church.

Chief Justice BURDICK, Justices EISMANN, HORTON and Justice *pro tem* WALTERS CONCUR.